COHEN, J.
Appellants, Anthony Alascia, GINLIN, LLC, and MEGJON, LLC, appeal a non-final order finding probable cause to support the State’s seizure of four parcels of real property under the Florida Contraband Forfeiture Act[1] (“FCFA”) and imposing a lis pendens on that property (“the Subject Properties”).
The State initiated civil proceedings against Appellants requesting, among other things, civil forfeiture of the Subject Properties pursuant to the FCFA. The complaint alleged that Appellants were part of the Allied Veterans of the World (“AVOTW’) criminal enterprise, which operated illegal gambling centers throughout Florida. It requested forfeiture of “all real property that was acquired by the proceeds of the [crimes specified in the complaint] in violation of the [FCFA].” The State “seized” the Subject Properties by filing a lis pendens with the Hernando County Clerk of Court.
An adversarial hearing was then held to determine whether probable cause existed to support the seizure of the Subject Properties under the FCFA. The State relied on two affidavits to establish probable cause: the Master Affidavit and the Seizure Affidavit.[2] According to the Master Affidavit, the gambling scheme involved the operation of “internet sweepstakes cafes.” Customers of the internet cafes actually participated in illegal gaming by accessing a computer terminal to play virtual slot machines. AVOTW acted as the parent company for over forty affiliates throughout Florida. The owners of the affiliates were for-profit companies that undertook the management of the day-today operations of the cafes. Appellant Anthony Alascia owned three of the for-profit companies that operated the cafes, including Appellants GINLIN, LLC, and MEGJON, LLC.
The Seizure Affidavit, which was attached to the Master Affidavit, specifically outlined the State’s basis for seizing the Subject Properties. The Seizure Affidavit alleged that there “is probable cause to believe that ... the real property listed ... constitute^] property involved in or traceable to Gambling violations, R.I.C.O. violations, and Money Laundering by members of the AVOTW Enterprise.” It stated that:
The Court’s authority to order forfeiture of property for violations of [the gambling laws] is found within F.S. 895.05(3) and F.S. 932.702. Florida Statute *405 932.702 provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting “specified unlawful activity” .... A “specified unlawful activity” ... includes [violations of the gambling laws].[3]
It further alleged that the affiant had “evidence that will show that the [Subject Properties] ... were purchased directly or indirectly with illegal proceeds or were purchased during the time frame of the racketeering activity and criminal violations whereas your affiant believes the funds would have been proceeds of the illegal activities of the AVOTW Enterprise.”
The trial court ultimately found that probable cause existed to believe that the Subject Properties were used in violation the FCFA. The trial court ordered the Subject Properties to be seized for the remainder of the litigation by the recording of a lis pendens on each of the Subject Properties.
Jurisdiction
Before reaching the merits of this case, we must first address a jurisdictional question. The State has argued that we lack jurisdiction to review the non-final order at issue. Appellants contend that the non-final order can be appealed under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii) because it determines “the right to immediate possession of property.” We find the State’s argument more persuasive.
Appeals of non-final orders are limited to those that fall into one of several enumerated categories. See Fla. R. App. P. 9.130(a)(3). The purpose of this rule is to limit the number of appealable non-final orders. Travelers Ins. Co. v. Bruns, 443 So.2d 959, 961 (Fla.1984). Under rule 9.130(a)(3)(C)(ii), we can review non-final orders that determine “the right to immediate possession of property.”
A' lis pendens is fundamentally different from physical seizure of property. Lis pendens literally means “pending lawsuit.” Adhin v. First Horizon Home Loans, 44 So.3d 1245, 1251 (Fla. 5th DCA 2010). The purpose of a lis pendens is to warn third parties that “whoever subsequently acquires an interest in the property will stand in the same position as the current owner/vendor, and take the property subject to whatever valid judgment may be rendered in the litigation.” Id. (quoting Avalon Assocs. of Del. Ltd. v. Avalon Park Assocs., Inc., 760 So.2d 1132, 1134 (Fla. 5th DCA 2000)). We acknowledge that a lis pendens puts a cloud on title and makes it more difficult to transfer the property. See DeGuzman v. Balsini, 930 So.2d 752, 754 (Fla. 5th DCA 2006). However, we also recognize that it is less restrictive than physical seizure, see Dep’t of Law Enforcement v. Real Prop., 588 So.2d 957, 962 (Fla.1991), and does not affect the immediate possession of the property. For example, in this case, the lis pendens does not oust Appellants from their property or grant possession of the property to the State; rather, it merely preserves assets, puts third parties on notice of the litigation, and grants the court jurisdiction over the property. See id. at 963; Adhin, 44 So.3d at 1251; see also Finney v. Wonder Dev. Corp., 392 So.2d 583, 584 (Fla. 5th DCA 1980) (holding that non-final order denying motion to discharge lis pendens was not appealable). Thus, we lack jurisdiction to entertain this appeal under rule 9.130(a)(3).
Nonetheless, we can consider this appeal as a petition for writ of certio-rari. See Fla. R. App. P. 9.040(c). “The *406 certiorari jurisdiction of district courts of appeal may be sought to review ... non-final orders of lower tribunals other than as prescribed by rule 9.130.” Fla. R. App. P. 9.030(b)(2)(A). We may utilize certiora-ri review where the petitioner demonstrates a departure from the essential requirements of the law resulting in material injury for the remainder of the case that cannot be remedied on post-judgment appeal. Cohen v. D.R. Horton, Inc., 121 So.3d 1121, 1124 (Fla. 5th DCA 2013) (citing Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004)). Certiorari review is appropriate in this case. See Suarez v. KMD Constr., Inc., 965 So.2d 184, 186 (Fla. 5th DCA 2007) (utilizing certiorari review to hear appeal from denial of motion to dissolve notice of lis pendens); Loidl v. I & E Grp., Inc., 927 So.2d 1016, 1017-18 (Fla. 2d DCA 2006) (discussing why certiorari review is the proper method to review order discharging lis pendens).
Merits
Appellants argue that the State failed to present sufficient evidence at the adversarial hearing to establish probable cause.[4] We agree and quash the order on review because the State has failed to present sufficient evidence to establish probable cause that the Subject Properties constitute “contraband” as defined by the FCFA.
We first note that, “because forfeiture actions are considered harsh extractions, [the Florida Supreme Court] has long followed a policy of strictly construing forfeiture statutes.” Velez v. Miami-Dade Cnty. Police Dep’t, 934 So.2d 1162, 1166 (Fla.2006) (citing DeGregorio v. Balkwill, 853 So.2d 371, 373 (Fla.2003)). Thus, if there is any ambiguity in the FCFA, it must be construed against forfeiture. Id. (citing DeGregorio, 853 So.2d at 373).
The FCFA allows state agencies to seize contraband and subjects that contraband to permanent forfeiture. § 932.703(l)(a), Fla. Stat. The statute defines contraband as “[a]ny real property ... which was used, is being used, or was attempted to be used as an instrumentality in the commission of ... any felony, or which is acquired by proceeds obtained as a result of a violation of the [FCFA].'” § 932.701(2)(a)6., Fla. Stat. (emphasis added).[5] It is a violation of the FCFA to:
(1) ... transport, carry, or convey any contraband article in, upon, or by means of any vessel, motor vehicle, or aircraft.
(2) ... conceal or possess any contraband article.
(3) ... use any vessel, motor vehicle, aircraft, or other personal property, or real property to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or *407 giving away of any contraband article.
(4) ... conceal, or possess, or use any contraband article as an instrumentality in the commission of or in aiding or abetting in the commission of any felony or violation of the Florida Contraband Forfeiture Act.
(5) ... acquire real or personal property by the use of proceeds obtained in violation of the Florida Contraband Forfeiture Act.
§ 932.702, Fla. Stat. Thus, “property connected to a violation of the gambling laws ... is not per se ‘used, in violation of the FCFA.” Campbell v. Racetrack Bingo, Inc., 75 So.3d 321, 323 (Fla. 1st DCA 2011). The FCFA “does not prohibit acquisition of property from proceeds from violation of the gambling laws, nor does the act subject property so acquired to forfeiture.” Id.
A similar conclusion was reached by this Court in Sheriff of Seminole County v. Oliver, 59 So.3d 232 (Fla. 5th DCA 2011). In that case, we held that the property at issue — stolen checks — could not be forfeited as traceable proceeds of a felony, despite the appellant’s argument to the contrary. Id. at 234. We explained:
[The appellant’s] argument ignores the statutory language that limits the type of proceeds subject to forfeiture to those “obtained as a result of a violation of the Florida Contraband Forfeiture Act.” The violations of the Act are listed in section 932.702. The only violation relevant here is the prohibition against possession of any “contraband article.” Because the checks were not “contraband articles,” the proceeds from the possession of the checks cannot be considered proceeds obtained from a “violation of the Act.”
Id. (citations omitted).
Similarly, here, the State apparently believes that the Subject Properties are subject to forfeiture because they were purchased with proceeds from an illegal gambling operation. The complaint requested forfeiture of “all real property that was acquired by the proceeds of the above specified crimes in violation of the [FCFA].” The “above specified crimes” were various violations of Florida’s RICO statute and gambling laws.[6] However, as noted above, real property is not subject to forfeiture if the only basis for forfeiture is that the property was acquired with proceeds derived from violations of the gambling laws. Campbell, 75 So.3d at 323.
In sum, the Subject Properties are not contraband subject to forfeiture under the FCFA because they were neither used as instrumentalities in the commission of a felony nor acquired by proceeds obtained as a result of a violation of the FCFA. See id.; see also § 932.701(2)(a)6., Fla. Stat. Accordingly, we are compelled to quash the probable cause order.
PETITION GRANTED; ORDER QUASHED.
PALMER and WALLIS, JJ., concur.

. §§ 932.701-.706, Fla. Stat. (2013).

. The State contends that the trial court also reviewed four Real Estate Affidavits, which further outlined the basis for probable cause. However, it is unclear based on the record whether the trial court considered the Real Estate Affidavits in making its probable cause determination.

. As will be demonstrated by our discussion of the FCFA, this is a misstatement of the law.

. Appellants also raise other issues that do not warrant discussion.

. The statute contains other definitions of contraband, but we find them inapplicable to the instant case. This includes the definition found in subsection (2)(a)2., which states: " 'Contraband article' means ... [a]ny gambling paraphernalia, lottery tickets, money, currency, or other means of exchange which was used, was attempted, or intended to be used in violation of the gambling laws of the state.” This definition does not apply here for two reasons. First, it does not appear to encompass real property; second, no evidence exists to prove that the Subject Properties were "used in violation of the gambling laws,” see Campbell v. Racetrack Bingo, Inc., 75 So.3d 321, 323 (Fla. 1st DCA 2011) ("[I]n order for the [property] to meet the statutory definition, some association with violations of the gambling law is not enough — [the property] must have been 'used' to carry out the violations ....").

. Additionally, the Real Estate Affidavits— which may or may not have been considered by the trial court — alleged that the affiant had "cause to believe that the [Subject Properties were] purchased in whole, or in part, with illegal proceeds derived from Racketeering Activities to include Gambling and Money Laundering.”