BERGER, J.
Satish B. Patel (“Patel”) appeals the trial court’s non-final order finding probable cause to support the State’s continued seizure of $142,815.27 in substitute assets pursuant to the Florida Contraband Forfeiture Act (“FCFA”).[1] We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(C)(ii) (permitting review of non-final orders that determine “the right to immediate possession of property”); Munoz v. City of Coral Gables, 695 So.2d 1283, 1284 (Fla. 3d DCA 1997).[2] Patel argues that the evidence presented by the State at the adversarial preliminary hearing failed to establish any link between the alleged criminal activity and the subject bank accounts as required by section 932.703(2)(c), Florida Statutes (2013), and, as a result, that the trial court erred when it found probable cause to continue the seizure of his assets. The State concedes this point, but argues that, independent of the actual use of the subject property, section 932.703(5)(a), permits the seizure of Patel’s accounts as “substitute assets” for the illegal cash proceeds acquired, but not located or seized. Because we hold that section 932.703(5) does not authorize the seizure of substitute assets prior to a forfeiture hearing, we reverse.
The State filed a petition under the FCFA, seeking forfeiture of certain assets owned by Satish Patel, Sonya Patel, Jigger Patel, and Baldevbhai KN, Inc./Apopka Discount Drugs.[3] An amended petition was later filed, which sought forfeiture of a total of $139,297.01 contained in four separate bank accounts, $4,275.12 in cash, and *1241 a 2009 Honda Accord. The petition alleged that the case was being brought as an “in rem” civil forfeiture pursuant to the FCFA because of drug violations, and that some of the property had been seized as:
A substitute asset for a “contraband article” because said vehicle or personal property has a value less than, or equal to, the value of money or currency that was a contraband article or proceeds of the violations above, and has been spent, transferred to other persons, or commingled with other funds, or placed beyond the jurisdiction of the court; [sic] as set out in Florida Statutes 932.708(5).
Patel asked for and received an adversarial preliminary hearing pursuant to section 932.708(2)(a), at which he challenged the seizure of the three items in which he claimed an interest: (1) an Old Florida National Bank account for Baldevbhai KN, Inc./Apopka Discount Drugs, which originally contained $57,758.75, but into which an additional $73,622.86 had been deposited since the filing of the petition, for a total of $131,381.61; (2) a Bank of America account in the name of Satish Baldevbhai Patel and Sonya S. Patel, which contained $7,158.54; and (3) $4,275.12 in cash taken from Apopka Discount Drugs Pharmacy.
At the hearing, the State offered its verified affidavit into evidence, as well as the testimony of Trooper William Cain, who had prepared the affidavit. The State established that Patel was the co-owner and only licensed pharmacist at Apopka Discount Drugs Pharmacy. It further offered evidence that from February 24, 2010 through November 14, 2011, Satish Patel and Jigger Patel,[4] the pharmacy technician, knowingly accepted and filled 145 forged prescriptions for oxycodone and other narcotics. The prescriptions involved sixteen patients and four different doctors. The State also offered evidence that Patel and/or Apopka Discount Drugs Pharmacy received between $700 and $1,000 upon filling each prescription, which was two to three times the going rate, meaning that the pharmacy and/or Patel had made between $100,500 and $145,000 on the illegal prescriptions. Trooper Cain testified that he had seized assets less than or equal to the value of what was earned in the pharmacy, including $57,758.75 in the Old Florida National Bank account, $7,158.54 in a Bank of America account, and $4,275.12 in cash found at the pharmacy when the warrant was executed. He testified that an additional $73,622.86 had been deposited in the Bank of America account since the warrant was executed. Trooper Cain admitted that he had no evidence that the pharmacy had filled any fraudulent prescriptions since November 22, 2011, and that the Bank of America account was a joint account with Patel’s wife. He further admitted that the cash had not been seized from the pharmacy until February 12, 2013. Trooper Cain also acknowledged that Patel owns several other businesses in addition to the pharmacy, including a number of Subway stores.
The issue before us is whether the evidence presented at the adversarial preliminary hearing is sufficient to show probable cause to seize the subject bank accounts and cash. Patel argues that the evidence is insufficient because of the failure to show that the monies seized were tied to the criminal activity alleged in the complaint. The State acknowledges the lack of any nexus between the assets seized and the criminal activity alleged in the complaint, but argues that, when ill-gotten gains cannot be found, it is permitted to seize “substitute assets” under the FCFA, *1242 and that such substitute property can be detained pretrial.
To properly evaluate the parties’ arguments, it is important to note the distinction between civil and criminal forfeiture actions. A civil forfeiture is an “in rem” action brought against the property. Kern v. State, 706 So.2d 1366, 1369 (Fla. 5th DCA 1998); In re Forfeiture of Fifty Five Thousand Forty-Five Dollars in U.S. Currency, 809 So.2d 105, 106 (Fla. 2d DCA 2002). It is premised on a legal fiction that the property, not its owner, is held guilty. Rosado v. Bieluch, 827 So.2d 1115, 1117 (Fla. 4th DCA 2002); U.S. v. Ursery, 518 U.S. 267, 275, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (“ ‘[This] forfeiture proceeding ... is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.’ ” (quoting Various Items of Pers. Prop. v. U.S., 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931))). “Neither a conviction nor an acquittal in a criminal case is determinative of the issues in the forfeiture proceeding. In fact, neither the record nor the judgment in the criminal case is admissible in the civil action seeking in rem forfeiture.” Kern, 706 So.2d at 1369. A criminal forfeiture, on the other hand, is a penalty or punishment imposed after a person has been convicted of a crime. Heather J. Garretson, Federal Criminal Forfeiture: A Royal Pain in the Assets, 18 S. Cal. Rev. L. & Soc. Just. 45, 47-48 (Fall 2008). It is an “in personam criminal remedy, targeted primarily at the defendant who committed the offense.” Id. at 48.
This case does not involve a criminal forfeiture. Instead, it was brought as an “in rem” civil forfeiture, pursuant to the FCFA, which makes it illegal to conceal or possess any contraband article, § 932.702(2), Florida Statutes (2013), or to acquire real or personal property by the use of proceeds obtained in violation of the FCFA, § 932.702(4), Florida Statutes (2013). The FCFA permits law enforcement agencies to seize any contraband article used in violation of the FCFA, and states that “[a]ll rights to, interest in, and title to contraband articles used in violation of [section] 932.702 shall immediately vest in the seizing law enforcement agency upon seizure.” § 932.703(l)(c), Fla. Stat. (2013). Personal property may be seized at the time of the violation, or subsequent to the violation, if the person entitled to notice is noticed of the right to an adversarial preliminary hearing, the purpose of which is to determine whether probable cause exists to believe that the property was used in violation of the FCFA. See § 932.703(2)(a), Fla. Stat. (2013). The statute provides:
(c) When an adversarial preliminary hearing is held, the court shall review the verified affidavit and any other supporting documents and take any testimony to determine whether there is probable cause to believe that the property was used, is being used, was attempted to be used, or was intended to be used in violation of the Florida Contraband Forfeiture Act. If probable cause is established, the court shall authorize the seizure or continued seizure of the subject contraband. A copy of the findings of the court shall be provided to any person entitled to notice.
(d) If the court determines that probable cause exists to believe that such property was used in violation of the Florida Contraband Forfeiture Act, the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use of such property pending disposition of the forfeiture proceeding. The *1243 court may order the claimant to post a bond or other adequate security equivalent to the value of the property.
§ 932.703(2)(c) and (d), Fla. Stat. (2013). The seizing agency is not required to establish at the seizure stage that the owner knew, or should have known after a reasonable inquiry, that the property was being employed or was likely to be employed in criminal activity. Gomez v. Village of Pinecrest, 41 So.3d 180, 188 (Fla.2010). It is enough to show that the subject property was used in violation of the FCFA. Id.
At issue in this case is the meaning of section 932.703(5), which contains a “substitute assets” provision, and whether this section permits the State to pursue a civil forfeiture directly against “substitute assets” that have no nexus to the criminal offense. Section 932.703(5) provides:
(5) The court shall order the forfeiture of any other property of a claimant, excluding lienholders, up to the value of any property subject to forfeiture under this section if any of the property described in this section:
(a) Cannot be located;
(b) Has been transferred to, sold to, or deposited with, a third party;
(c) Has been placed beyond the jurisdiction of the court;
(d) Has been substantially diminished in value by any act or omission of the person in possession of the property; or
(e) Has been commingled with any property which cannot be divided without difficulty.
M[5]'
Legislative intent is the polestar of statutory interpretation. Gomez, 41 So.3d at 185. “ ‘To discern legislative intent, a court must look first and foremost at the actual language used in the statute.’ ” Id. (quoting Larimore v. State, 2 So.3d 101, 106 (Fla.2008)). When the language in the statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and obvious meaning. Velez v. Miami-Dade Cnty. Police Dep’t, 934 So.2d 1162, 1164 (Fla.2006). Furthermore, a statute should be interpreted to give effect to every clause in it and to accord meaning and harmony to all its parts. D.M.T. v. T.M.H., 129 So.3d 320, 332 (Fla.2013). We are, however, “ ‘without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.’ ” Velez, 934 So.2d at 1164-65 (quoting McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984))).
*1244 Forfeitures are considered “harsh exactions” and are not favored in the law. Gomez, 41 So.3d at 185. As a result, the forfeiture statutes must be strictly construed against the government. Id.; DeGregorio v. Balkwill, 858 So.2d 371, 373 (Fla.2003). And, any ambiguity in the forfeiture statutes must be construed against forfeiture. DeGregorio, 853 So.2d at 373.
In Florida, forfeiture proceedings are a two-stage process. Gomez, 41 So.3d at 184. The first stage, outlined in section 932.703(2), involves the seizure of property, where, if an adversarial preliminary hearing is held, “ ‘the seizing agency is required to establish probable cause that the property subject to forfeiture was used in violation of the Forfeiture Act.’ ” Gomez, 41 So.3d at 184 (quoting Velez, 934 So.2d at 1164 (citing § 932.701(2)(f), Fla. Stat. (2002))). The second stage is the forfeiture stage, involving the actual forfeiture proceeding. Id. During the forfeiture trial, the court or jury will determine whether the subject property will be forfeited. Id.; see also §§ 932.701(2)(g) and 932.704, Fla. Stat. (2013). The various subsections of section 932.703 specifically distinguish between the two stages. Gomez, 41 So.3d at 185. For example, section 932.703(l)(a) provides:
Any contraband article, vessel, motor vehicle, aircraft, other personal property, or real property used in violation of any provision of the Florida Contraband Forfeiture Act, or in, upon, or by means of which any violation of the Florida Contraband Forfeiture Act has taken or is taking place, may be seized and shall be forfeited subject to the provisions of the Florida Contraband Forfeiture Act.
(Emphasis added). Likewise, section 932.703(l)(b) sets forth:
Notwithstanding any other provision of the Florida Contraband Forfeiture Act, except the provisions of paragraph (a), contraband articles set forth in s. 932.701 (2)(a)7. used in violation of any provision of the Florida Contraband Forfeiture Act, or in, upon, or by means of which any violation of the Florida Contraband Forfeiture Act has taken or is taking place, shall be seized and shall be forfeited subject to the provisions of the Florida Contraband Forfeiture Act.
(Emphasis added). And, section 932.703(2)(d), which directs the court in the event it determines probable cause exists to believe the subject property was used in violation of the FCFA provides:
If the court determines that probable cause exists to believe that such property was used in violation of the Florida Contraband Forfeiture Act, the court shall order the property restrained by the least restrictive means to protect against disposal, waste, or continued illegal use of such property pending disposition of the forfeiture proceeding. The court may order the claimant to post a bond or other adequate security equivalent to the value of the property.
(Emphasis added). In contrast, section 932.703(5) references only the forfeiture stage, providing in pertinent part:
The court shall order the forfeiture of any other property of a claimant, excluding lienholders, up to the value of any property subject to forfeiture under this section ....
(Emphasis added).
It is a general principle of statutory construction that where the legislature includes wording in one section of a statute and not another section of the same statute, it is presumed to have been intentionally excluded. See Beach v. Great W. Bank, 692 So.2d 146, 152 (Fla.1997). Here, the plain and unambiguous language of section 932.703, leads us to conclude that subsection (5) refers only to the forfei *1245 ture stage of the proceedings and not the seizure stage. See Gomez, 41 So.3d at 186 (explaining that section 932.70S(6)(a), which requires proof that the owner knew, or should have known after reasonable inquiry, that the subject property was being employed or likely to be employed in criminal activity, clearly refers to the forfeiture stage, not the seizure stage). Accordingly, we hold that section 932.703(5) does not authorize the seizure of substitute assets prior to forfeiture; rather it is intended to be used once a forfeiture has been ordered and cannot be satisfied due to the circumstances outlined therein. See Campbell v. Racetrack Bingo, Inc., 75 So.3d 321, 324 (Fla. 1st DCA 2011) (explaining that if the sheriff had ultimately prevailed in the forfeiture proceeding, section 932.703(5) would have entitled him to forfeit other property if the subject property could no longer be located).
REVERSED.
PALMER and EVANDER, JJ., concur.

. See §§ 932.701-.706, Fla. Stat. (2013).

. But see Alascia v. State of Florida, Dep’t of Legal Affairs, 135 So.3d 402, 405 (Fla. 5th DCA 2014) (determining non-final order finding probable cause to support seizure of real property under FCFA and imposing lis pen-dens was not reviewable as order determining "the right to immediate possession of property,” but finding certiorari review was appropriate). Since the present case involves the seizure of U.S. currency and not the issuance of a lis pendens, we find it distinguishable.

.Neither Sonya Patel nor Jigger Patel contested the forfeiture.

. Satish Patel and Jigger Patel are not related.

. Relying on a number of federal cases, the State argues that section 932.703(5) allows it to seize "innocent” assets pretrial, as a "substitute” for the contraband which can be seized under the Act. Most of the cases cited by the State, however, involve forfeitures sought under a "substitute assets” provision, after a criminal forfeiture order remained unsatisfied. See, e.g., U.S. v. Fleet, 498 F.3d 1225 (11th Cir.2007) (involving criminal forfeiture order entered for money laundering, after which government sought forfeiture under a "substitute assets” provision); U.S. v. Reed, 924 F.2d 1014 (11th Cir. 1991). (involving criminal forfeiture order entered for RICO violations, after which government sought forfeiture of substitute assets); U.S. v. Martenson, 780 F.Supp. 492 (N.D.Ill.1991) (involving entry of criminal forfeiture order, after which government sought to obtain substitute assets). A few cases involve the pretrial detention of substitute assets in criminal forfeiture proceedings. See, e.g., In re Billman, 915 F.2d 916 (4th Cir.1990) (involving RICO violations); U.S. v. Swank Corp., 797 F.Supp. 497 (E.D.Va.1992) (involving money laundering). We note, however, that these cases appear contrary to the great weight of authority, which hold that substitute assets are not subject to pretrial restraint under provisions virtually identical to those in this case.