BERGER, J.,
concurring in part and dissenting in part.
I agree with the majority that in some instances the Florida Contraband Forfeiture Act (“FCFA”)[5] serves a punitive purpose.[6] I also agree that when forfeitures under the FCFA are not solely remedial, they are subject to an excessive fines analysis. See Austin v. United States, 509 U.S. 602, 621-22, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding that in rem civil forfeitures that serve in part as punishment are subject to an Eighth Amendment excessive fines analysis). However, I disagree with the majority view that the forfeiture in this case is excessive.[7] Accordingly, after further review, I would *879 grant Appellee’s Motion for Rehearing, withdraw our previous opinion, and affirm the trial court’s order of forfeiture.
As we explained in Patel v. State, 141 So.3d 1239, 1242 (Fla. 5th DCA 2014), there is a distinction between civil and criminal forfeiture actions.
A civil forfeiture is an “in rem” action brought against the property. Kern v. State, 706 So.2d 1366, 1369 (Fla. 5th DCA 1998); In re Forfeiture of Fifty Five Thousand Forty-Five Dollars in U.S. Currency, 809 So.2d 105, 106 (Fla. 2d DCA 2002). It is premised on a legal fiction that the property, not its owner, is held guilty. Rosado v. Bieluch, 827 So.2d 1115, 1117 (Fla. 4th DCA 2002); U.S. v. Ursery, 518 U.S. 267, 275, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (“ ‘[This] forfeiture proceeding ... is in rem. It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient.’ ” (quoting Various Items of Pers. Prop. v. U.S., 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931))). “Neither a conviction nor an acquittal in a criminal case is determinative of the issues in the forfeiture proceeding. In fact, neither the record nor the judgment in the criminal case is admissible in the civil action seeking in rem forfeiture.” Kern, 706 So.2d at 1369. A criminal forfeiture, on the other hand, is a penalty or punishment imposed after a person has been convicted of a crime. Heather J. Garretson, Federal Criminal Forfeiture: A Royal Pain in the Assets, 18 S. Cal. Rev. L. & Soc. Just. 45, 47-48 (Fall 2008). It is an “in personam criminal remedy, targeted primarily at the defendant who committed the offense.” Id. at 48.
Id. at 1242.
There is also a distinction between the excessiveness inquiry required for civil and criminal forfeitures. As Justice Scalia pointed out in his concurring opinion in Austin, “the excessiveness inquiry for statutory in rem forfeitures is different from the usual excessiveness inquiry.” 509 U.S. at 623, 113 S.Ct. 2801 (Scalia, J., concurring). He iterated that “[t]he question is not how much the confiscated property is worth, but whether the confiscated property has a close enough relationship to the offense.” Id. at 628,113 S.Ct. 2801.
With this distinction in mind, our sister court in In re Forfeiture of 1990 Chevrolet Blazer VIN: IGNCT18Z3L8139145, 684 So.2d 197, 198 (Fla. 2d DCA 1996), outlined a test for determining whether a civil forfeiture pursuant to the FCFA is excessive. The test contains two parts: an instrumentality test followed by a proportionality review. Id.
Factors used to determine whether the instrumentality test is met include:
(1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spatial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.
Id. (quoting United States v. Chandler, 36 F.3d 358, 365 (4th Cir.1994)).
Utilizing the factors quoted above, as the Appellant rightly concedes, the relationship between the forfeited property and the offense meets the instrumentality test. The evidence suggests that the forfeited property was used for the sole purpose of unlawfully manufacturing and cul *880 tivating cannabis for sale and distribution. When officers initially entered Farley’s property to investigate a possible burglary in progress, they were met with the pungent odor of cannabis. In plain view throughout the uninhabited house were signs of hydroponically cultivated cannabis. Indeed, upon execution of a search warrant, three cannabis grow rooms[8] were located in the house, along with fifteen mature cannabis plants, twenty-one small cannabis plants with root stems, a glass jar containing an undetermined quantity of cannabis, approximately eighty-seven grams of cannabis in a gallon-sized plastic bag, as well as an assortment of drug paraphernalia, growing manuals and equipment. Additionally, over $8,200 in power charges were discovered to have been diverted from the home’s meter.
Having determined that the forfeited property was an instrumentality of the offense, the analysis turns to proportionality. As the majority correctly notes, proportionality is determined by considering “(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature or sentencing commission; and (3) the harm caused by the defendant.” In re Forfeiture of: 2006 Chrysler 4-Door, Identification No. 2CSKA53GX6H258059, 9 So.3d 709, 712 (Fla. 2d DCA 2009) (citing United States v. Bajakajian, 524 U.S. 321, 337-40, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)); see also United States v. Browne, 505 F.3d 1229, 1281 (11th Cir.2007). In order to sustain a forfeiture under a proportionality review, “[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.” Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028. To be unconstitutional, however, the amount of the forfeiture must be “grossly disproportional to the gravity of the defendant’s offense.” Id. at 337 (emphasis added).
Applying these factors, I cannot conclude that the forfeiture of Farley’s property is grossly disproportional to the gravi *881 ty of his offense. Clearly, the Legislature considered Farley’s offenses to be serious transgressions. As charged, he faced up to forty-seven years in prison. Two of the charges, manufacturing cannabis within 1,000 feet of a school ánd ownership or possession [of property] for trafficking in or manufacturing a controlled substance, can hardly be considered insignificant, as both are second-degree felonies punishable by up to fifteen years in prison and carry with them fines of $10,000. See §§ 893.13(l)(c); 893.1351(2), Fla. Stat. (2008). The Legislature has also made clear that real property used in the commission of the felonies described above is contraband subject to forfeiture under the FCFA. See §§ 893.12(2)(b); 932.701(2)(a)6., Fla. Stat. (2008).
In determining the harm caused by the defendant, we cannot ignore the public safety concerns posed by trafficking in drugs, particularly within 1,000 feet of a school.[9] See Gordon v. State, 139 So.3d 958, 964 (Fla. 2d DCA 2014) (determining that on a facial challenge to the constitutionality of a fine imposed, the court must look to the potential harm caused as well as the actual harm); see also United States v. $180,898.00 U.S. Currency, 39 Fed.Appx. 570, 573 (9th Cir.2002) (“[TJhere was significant harm caused by [the defendant’s] participation in the growing and harvesting of ... marijuana destined for sale on the street. It is an established fact that drug abuse creates' a threat to public health and welfare. Given these facts and circumstances, this factor weighs heavily in favor of forfeiture.”). Indeed, the sheer number of plants recovered (thirty-six in total) during the search of Farley’s home indicates that he was not cultivating the cannabis for his own personal use. See § 893.1351(4), Fla. Stat. (2008) (“For the purposes of this section, proof of the possession of 25 or more cannabis plants constitutes prima facie evidence that the cannabis is intended for sale or distribution.”). In my view, the fact that Farley, ultimately pleaded to lesser crimes does not diminish the gravity of his operation. While the actual harm Farley caused may not be able to be quantified, the potential harm caused by the magnitude of his enterprise is certainly great and cannot be discounted.
I recognize that there is a disparity between the maximum fine Farley faced and the value of the property forfeited. Nevertheless, I do not believe that fact alone renders this forfeiture unconstitutional. See United States v. Chaplin’s, Inc., 646 F.3d 846, 852 (11th Cir.2011) (noting forfeitures above the statutory maximum fine are not presumptively invalid, but rather receive closer scrutiny); see also In re Forfeiture of: 2006 Chrysler 1-Door, Identification No. 2C3KA58GX6H258059, 9 So.3d at 713 (noting that “the imposition of double, treble, or quadruple damages to deter and punish historically have been upheld, although there is no bright-line ratio”). The majority discounts complete *882 ly, and in my view, improperly, the importance of factoring the instrumentality test into its analysis. See In re Forfeiture of 1990 Chevrolet Blazer VIN: IGNCT18Z3L8139145, 684 So.2d at 199. (“These facts, combined with the somewhat attenuated relationship between the property and the offense under the instrumentality test, lead us to hold that the forfeiture of Mr. Wojnar’s Blazer violated the Excessive Fines Clause.”). This is not a case where the relationship between the property and the offense, is attenuated. Quite the contrary. Farley was a drug grower, cultivator, and dealer who used the property forfeited solely for the purpose of continuing his criminal enterprise. Accordingly, given the factors listed above, I cannot conclude that the forfeiture of Farley’s property is grossly disproportional to the gravity of his offense.

. §§ 932.701-706, Fla. Stat. (2008).

. Unlike the majority, I do not believe the FCFA serves a punitive purpose in all cases. The Legislature has determined that "[i]t is the policy of this State that law enforcement agencies shall utilize the provisions of the Florida Contraband Forfeiture Act to deter and prevent the continued use of contraband articles....” See § 932.704(1), Fla. Stat. (2008) (emphasis added). Nothing in this directive suggests that the Legislature intended the FCFA to serve as punishment. Rather, the language strongly suggests that the Legislature intended the FCFA to serve a remedial purpose. In my view, whether the purpose of a particular forfeiture is remedial, punitive, or both will depend on the specific facts of the case.

.Because this is an "instrumentality” forfeiture, I also question the majority’s determination that the forfeiture in this case is punitive. Regardless, under the facts and circumstances of this particular case, I cannot conclude it was excessive.

. The verified complaint described the three grow rooms as follows:
15. Grow room 1 was located in a small basement area. The entrance to grow room 1 was sealed by heavy plastic strips and black plastic sheeting. The walls in the grow room were covered with aluminum reflective material. An elaborate lighting system with a/c ducts running to each light fixture was observed by the officers in grow room 1. The officers observed a dehumidifier and what appeared to be a separate air conditioning system for grow room 1. The officers observed multiple timers and power transformers to operate the light fixtures. The officers observed eight large suspected cannabis plants ranging from four to six feet in height growing in black plastic buckets with a series of air pumps to aerate the water. A leaf was collected from this plant grouping and submitted to the FDLE crime lab.
16. Grow room 2 was located in a large closet situated off of a great room in the front of the residence. Grow room 2 was located above the basement area identified as grow room 1. The officers observed an a/c duct running from the basement through the drywall into the closet and a second large a/c duct running into grow room 2 through a hole cut in the closet. The officers observed several large light fixtures in grow room 2. The officers observed four large suspected cannabis plants growing in black plastic buckets. The buckets had a series of air pumps aerating the water. A leaf was collected from this plant grouping and submitted to the FDLE crime lab.
17.Grow room 3 was located in a guest bathroom off of the great room. The officers observed three large suspected cannabis plants ranging from four to five feet tall in grow room 3. The officers also observed a large black plastic container with "E Z Clone” embossed on the side. Said container had twenty-one small plants with root systems. The officers observed a series of air pumps for aeration and additional lighting and hydroponic equipment.

. In footnote four, the majority suggests that the harm caused might have been greater if there was evidence in the record to indicate that the "operation went on for some time.” However, one need only look to the affidavit of Lt. Ralph Palmer to find such evidence. In his affidavit filed in support of Farley’s arrest warrant, Lt. Palmer stated:
Two calendar books were recovered in the residence with hand written notes on the growing cycles and cultivation of the suspected cannabis plants. There were also hand written notes recovered indicating that this manufacturing and cultivation had been going on for several years.
The sale and or distribution is evident based upon the large amount of suspect cannabis plants, the 87 grams of packaged suspect cannabis and the packaging equipment recovered.
(Palmer Aff. 4) (emphasis added).