IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SAND LAKE HILLS HOMEOWNERS
ASSOCIATION, INC.,

      Appellant,

 v.                                    Case No.  5D16-21

JEFFREY C. BUSCH, SUSAN D. BUSCH
AND DAVID F. ALLAN, ET AL.,

      Appellees.

_____/

Opinion filed January 20, 2017

Appeal from the Circuit Court
for Orange County,
Lisa T. Munyon, Judge.

John Bengier, of Meier, Bonner, Muszynski,
O'Dell & Harvey, P.A., Longwood,
for Appellant.

Frederic B. O'Neal, Windermere,
for Appellees, Jeffrey C. Busch and Susan
D. Busch.

No Appearance for other Appellees.

ORFINGER, J.

      Appellant, Sand Lake Hills Homeowners Association, Inc., appeals a final

judgment awarding attorney's fees to Jeffrey C. Busch and Susan D. Busch, pursuant to

sections 57.105(7) and 712.08, Florida Statutes (2015). We affirm in part and reverse in part.

In the 1970s and 1980s, an area loosely known as Sand Lake Hills was developed in sections, with each section having its own separately recorded covenants and restrictions. The Busches' home is located in Section Three of the Sand Lake Hills community. The original covenants and restrictions applicable to Sand Lake Hills Section Three were recorded in 1978. Under the original covenants and restrictions, Appellant was a voluntary homeowners' association where some homeowners voluntarily contributed to the upkeep and maintenance of the community, while others did not. Because membership was voluntary, Appellant is not a statutory homeowners' association. See § 720.301(7), Fla. Stat. (2000) (defining homeowners' association as "Florida corporation responsible for the operation of a community or a mobile home subdivision in which the voting membership is made up of parcel owners or their agents, or a combination thereof, and in which membership is a mandatory condition of parcel ownership, and which is authorized to impose assessments that, if unpaid, may become a lien on the parcel").

In 2004, Appellant recorded a "Notice Of Reassertion Of Covenants And Restrictions Pursuant To Chapter 712, Florida Statutes" in the public records of Orange County, Florida ("MRTA Preservation Notice") in an effort to preserve the covenants and restrictions applicable to Sand Lake Hills Section Three.[1] Appellant also prepared an

---

[1] Under the Marketable Record Titles Act ("MRTA"), any person with an interest in land may preserve that interest by filing a notice with the clerk of the circuit court. The notice must be filed during the thirty-year period following the effective date of the root of title. § 712.05, Fla. Stat. (2004).

Amended and Restated Declaration of Covenants and Restrictions Of Sand Lake Hills ("ARD"), in an effort to convert the voluntary homeowners' association to a statutory homeowners' association with mandatory assessments. Appellant, through its Board of Directors, asked the individual homeowners to execute a "Joinder and Consent" agreeing to the ARD with the new declarations. After approval by more than fifty percent of the Section Three homeowners, Appellant recorded the ARD in the public records.

The Busches did not consent to the ARD. Nonetheless, Appellant informed the Busches that since a majority of the Section Three property owners had adopted the ARD, it was "legally binding on all property owners of Sand Lake Hills, Section 3," and the "current assessment for calendar year 2008 [of] $100.00" was required to be paid. The Busches objected, and filed a complaint for slander of title, declaratory relief, and injunctive relief in Orange County Case No. 2008-CA-012464 (the "ARD case"). In a separately filed lawsuit in Orange County Case No. 2010-CA-011262, the Busches challenged Appellant's authority to file the 2004 MRTA Preservation Notice (the "MRTA case"). Ultimately, the trial court found that Appellant did not have the authority to file the 2004 MRTA Preservation Notice. The trial court also ruled the ARD ineffective as to the Busches, and therefore, it did not affect their title. Those rulings are unchallenged on appeal.

The dispute then turned to attorney's fees, the subject of this appeal. The court granted the Busches' fee motion against Appellant, concluding that the ARD provided for the recovery of attorney's fees in any action to enforce compliance with its provisions and that the reciprocal provisions of section 57.105(7), Florida Statutes (2015), entitled the Busches to recover their reasonable fees against Appellant on count II of the ARD case.

3

The court also awarded attorney's fees pursuant to section 712.08 in the MRTA case, finding that the 2004 MRTA Preservation Notice, which Appellant filed, was a false or fictitious claim.

1.  The ARD Case and Section 57.105(7), Florida Statutes.

"It is well-settled that attorney['s] fees can derive only from either a statutory basis or an agreement between the parties." Trytek v. Gale Indus., Inc., 3 So. 3d 1194, 1198 (Fla. 2009) (citing State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 832 (Fla. 1993)). When entitlement to attorney's fees is based on a provision in a contract, an appellate court reviews the matter de novo. Gibbs Constr. Co. v. S.L. Page Corp., 755 So. 2d 787, 790 (Fla. 2d DCA 2000). But, a stranger to the contract cannot recover attorney's fees based on the contract. See HFC Collection Ctr., Inc. v. Alexander, 190 So. 3d 1114, 1116-17 (Fla. 5th DCA 2016).

Here, the trial court found that the ARD was ineffective as to the Busches and did not encumber their property. "[W]here a motion for attorney's fees is based on a prevailing-party provision of a document, the fact that a contract never existed precludes an award of attorney's fees." David v. Richman, 568 So. 2d 922, 924 (Fla. 1990). Because the trial court found that no contract existed between Appellant and the Busches, the Busches were not entitled to attorney's fees under the fee provision of the ARD. Thus, we reverse the order awarding attorney's fees to the Busches and against Appellant pursuant to the ARD and section 57.105(7).

2.  The MRTA Case

The court awarded attorney's fees pursuant to section 712.08 in the MRTA case, concluding that the MRTA Preservation Notice was a false or fictitious claim. Appellant

4

argues that this was error because (1) it is not a homeowners' association within the meaning of chapter 712 and (2) it did not intentionally file a false or fictitious claim within the meaning of section 712.08.

A statute that awards attorney's fees is in derogation of the common law rule that each party pay its own attorney's fees and must be strictly construed. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 278 (Fla. 2003). The question before us is a matter of statutory interpretation, which we review de novo. E.g., Borden v. East–European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006); State v. Glatzmayer, 789 So. 2d 297, 301 n.7 (Fla. 2001). Legislative intent is the polestar that guides our analysis regarding statutory interpretation. E.g., Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013); Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003); Patel v. State, 141 So. 3d 1239, 1243 (Fla. 5th DCA 2014). To discern legislative intent, our analysis begins with the statute's plain language. E.g., Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007); Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 5 (Fla. 2004); State v. Dugan, 685 So. 2d 1210, 1212 (Fla. 1996); Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984). "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005). The statute's plain and ordinary meaning must control unless this leads to an unreasonable result or a result clearly contrary to legislative intent. Id.

The Florida Legislature enacted MRTA to simplify and facilitate land transactions. See Blanton v. City of Pinellas Park, 887 So. 2d 1224, 1227 (Fla. 2004). Section 712.05(1), Florida Statutes (2015), provides, in part: "[A] homeowners' association

5

desiring to preserve any covenant or restriction may preserve and protect the same from extinguishment by the operation of this act by filing for record, during the 30-year period immediately following the effective date of the root of title, a written notice . . . ." Section 712.06, Florida Statutes (2015), sets forth the contents of the notice and must be carefully followed because pursuant to section 712.08, a person who files a false notice is liable to the owner for costs, attorney's fees, and damages sustained by the owner:

> **Filing false claim**.- *No person* shall use the privilege of filing notices hereunder *for the purpose of asserting false or fictitious claims to land*; and in any action relating thereto if the court *shall find* that *any person has filed a false or fictitious claim*, the court may award to the prevailing party all costs incurred by her or him in such action, including a reasonable attorney's fee, and *in addition* thereto may *award to the prevailing party all damages that she or he may have sustained as a result of the filing of such notice of claim*.

§ 712.08, Fla. Stat. (2015) (emphasis added).

Thus, section 712.08 prohibits false filings by any "person." It is irrelevant that Appellant was not a homeowners' association as defined in section 720.301 or a homeowners' association entitled to enforce use restrictions. As a corporation, Appellant is a "person" under the statute. See § 1.01(3), Fla. Stat. (2015) ("The word 'person' includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.").

Second, and contrary to Appellant's argument, section 712.08 does not require the filer to intentionally or knowingly file the false or fictitious claim. Rather, the statute's plain language provides: "[I]f the court shall find that any person has filed a false or fictitious claim, the court may award to the prevailing party all costs incurred by her or him in such action, including a reasonable attorney's fee . . . ." § 712.08, Fla. Stat. (2015).

6

The statute does not define "false" or "fictitious." Thus, we turn to a dictionary to ascertain the plain and ordinary meaning of these terms. See L.B. v. State, 700 So. 2d 370, 372 (Fla. 1997) ("[A] court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term."). "False" ordinarily means "not real or genuine," "not true or accurate; especially: deliberately untrue : done or said to fool or deceive someone," or "based on mistaken ideas." *False,* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/false (last visited Dec. 27, 2016). "Fictitious" customarily means "not true or real." *Fictitious*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/fictitious (last visited Dec. 27, 2016). Since "false" or "fictitious" includes "mistaken ideas," as well as "not real or genuine" and "not true or real" claims, section 712.08 provides a remedy in the trial court's discretion when a claim is filed against another's property and that claim is later determined to be untrue. It does not require deliberate untruthfulness. Melissa Scaletta, *Marketable Record Title Act & Uniform Title Standards*, *in* Fla. Real Prop. Title Examination & Ins. § 2:13 (Fla. Bar 7th ed., 2012) ("Anyone who files a false claim is liable to the owner for costs, attorneys' fees, and damages sustained by the owner. F.S. 712.08."). If the Legislature intended the trial court to find that the person *intentionally* filed a false or fictitious claim, it could have easily required such a finding, as the North Carolina legislature did in its similarly worded statute. Cf. N.C. Gen. Stat. § 47B-6 (2015) ("No person shall use the privilege of registering notices hereunder for the purpose of asserting false or fictitious claims to real property; and in any action relating thereto if the court shall find that *any person has intentionally registered a false or fictitious claim*, the court may award to the prevailing party all costs incurred by him in such action, including

7

a reasonable attorney's fee . . . .") (emphasis added). To read the word "intentionally" into the statute would make section 712.08 a penal statute, rather than a remedial statute that provides a remedy to a person who expends attorney's fees to clear the title of a "false or fictitious claim" on his, her, or its real property. See Adams v. Wright, 403 So. 2d 391, 394 (Fla. 1981) ("A remedial statute is 'designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good.' It is also defined as '(a) statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before.'" (quoting Black's Law Dictionary (5th ed. 1979))).

For these reasons, we affirm that portion of the order awarding the Busches attorney's fees and costs in the MRTA case as well as costs in the ARD case. However, we reverse only that portion of the order awarding attorney's fees to the Busches and against Appellant in the ARD case.

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

COHEN, C.J., and HODGES, R.W., Associate Judge, concur.

8