936 So.2d 757 (2006)
Molly BOWEN; Molly Bowen as Guardian of Anna Serena, David Serena, Joel Serena, Grace Clayton, and Rebecca Serena; Dorothy Bowen; Sunday Haas; Sam Blanton, III; Sam Blanton, III, as Guardian of Sam Blanton, IV; Leigh Fathauer; Jose Fernandez; and Diane Ballard; Appellants/Cross-Appellees,
v.
James D. BREWER, Walter L. Brewer, and Robert C. Brewer, Appellees/Cross-Appellants.
No. 2D05-3400.
District Court of Appeal of Florida, Second District.
August 30, 2006.
*758 John Rimes, III, Tallahassee, for Appellants/Cross-Appellees.
Hank B. Campbell of Gray Robinson, P.A., Lakeland, for Appellees/Cross-Appellants.
SEALS, JAMES H., Associate Judge.
The appellants (the "Bowens") and their attorneys appeal from a final judgment for attorney's fees and costs in favor of James D. Brewer, Walter L. Brewer, and Robert C. Brewer (the "Brewers") under section 57.105, Florida Statutes (2003). The trial court found that the Brewers were entitled to recover $40,428.50, one-half to be paid by the Bowens, and the other half by their attorneys.[1] In its order, the trial court found that the Bowens "should have known before or shortly after suit was filed that the allegations against the Brewers were unfounded." Because the trial court's finding is not supported by competent, substantial evidence, we reverse the award of fees under section 57.105.
The trial court also awarded the Brewers $283.59 in costs. Because the Brewers were the prevailing parties in the litigation, they were entitled to an award of costs under section 57.041. Accordingly, we affirm the $283.59 cost award.
The Brewers filed a cross-appeal for $4950 which they say they expended for an expert witness who testified at the trial *759 court hearing on their claim for attorney's fees. The trial court did not award the Brewers any amount as expert witness fees and did not address the issue in its final order. In light of our decision to reverse the trial court's award of attorney's fees, we decline to order the trial court to consider an award of expert witness fees to the Brewers.

FACTS AND PROCEDURAL BACKGROUND
The Bowens own residential property along Horse Creek in DeSoto County. The Brewers own several thousand acres of adjacent agricultural property. Vernon C. Hollingsworth, Jr.[2], owns land contiguous to that of the Brewers and which may be entered at a common access point on S.R. 70. The Bowens filed suit in December 2002 against, among others, the Brewers and Hollingsworth. The Bowens' amended complaint, filed February 18, 2003, alleged that the defendants had deposited sewage sludge on their own property and that the sludge had spread to Horse Creek. The resulting contamination and foul odors had rendered the Bowens' property virtually uninhabitable and caused the Bowens illness and other discomforts.
On September 5, 2003, after the Bowens had an opportunity to depose Walter Brewer, the Brewers filed a motion for summary judgment on all claims against them. They argued that Walter Brewer's unequivocal denial, in his deposition, that any sludge had ever been deposited on the Brewers' property demonstrated that there was no genuine issue of material fact and that the Brewers were entitled to judgment as a matter of law.
After a hearing, the trial court granted the Brewers' motion and entered "summary final judgment" on February 24, 2004. In the order, the trial court reserved jurisdiction to assess attorney's fees and costs against the Bowens, if appropriate. The final judgment was not appealed.
On March 17, 2004, the Brewers filed a motion for attorney's fees under section 57.105(1) and to tax costs in accordance with section 57.041. In support of their motion for fees, the Brewers filed Walter Brewer's deposition. In his deposition, Walter Brewer testified that he is a lawyer and has represented Hollingsworth and the other Brewers in various matters. Brewer asserted that he had represented Hollingsworth in a negotiation that involved a lease and the application of sewage sludge to lands.
Brewer identified the Brewer property in DeSoto County as the "Janice Lee Ranch." The Janice Lee Ranch comprises of several thousand acres and is located at S.R. 70 and Curtis Road. The Brewers are joint owners of the Janice Lee Ranch, which is used for growing citrus and raising cattle. Walter Brewer admitted that "years ago" the Brewers had considered applying sewage sludge to the Janice Lee Ranch and had permitted "some sludge outfit" to tour the property. However, he stated unequivocally that no sewage sludge had ever been put on their property. When shown discovery documents signed by Hollingsworth that purported to authorize sludge application to the Brewers' land, the following exchange took place:
Q. So if Mr. Hollingsworth signed a document in which he stated that he had the authority to authorize the application of sewage sludge on your property, *760 your answer would be that he did not have that authority?
A. Probably had it through assumptions.
Q. Okay. Why don't you run through what those assumptions would have been?
A. That we were interested in possibly applying sludge to a portion of the ranch, and that I believe it was my father who took someone around the ranch and showed it to them, and my assumption is that whoever with Blue[3] or whatever just went back to Mr. Hollingsworth and said, "Here's the application. Please sign it."
In opposition to the Brewer's motion for fees, the Bowens filed Molly Bowen's affidavit and several documents obtained through discovery. One of the most pertinent of these documents was a full color map depicting a portion of DeSoto and Manatee Counties from the Hardee County line south to S.R. 70. The map is headed "Hollingsworth/Brewer" and was prepared by or for an entity called "Blue Environmental," which the Bowens contend has a corporate relationship to Blue Septic Tank Service, Inc., one of the defendants in the lawsuit. At his deposition, Walter Brewer admitted that the property depicted on the map included the Janice Lee Ranch. Ms. Bowen's affidavit represented that she had "observed for years sewage sludge tankers and dump trucks actively and busily turning north off S.R. 70, delivering sewage sludge to the northwest corner of DeSoto County, the location of the `Hollingsworth-Brewer' site."
The Bowens also filed a letter on the letterhead of Severn Trent-Avatar Utility Services, LLC, dated April 24, 2001, and addressed to Rudy Isaac, Domestic Wastewater Section, Florida Department of Environmental Protection (DEP). The letter states in part:
These forms are being submitted in order to allow the referenced facilities to begin land applying residuals to the Hollingsworth/Brewer, Anthony Carlton Ranch, and Triple D. Ranch application sites as of April 25, 2001.
The Bowens also produced a DEP chart entitled "Southwest District Land Application Sites-Desoto County." The chart includes Hollingsworth/Brewer as a site name. Further, a document on the DEP letterhead entitled "Agricultural Use Plan," identified the location of the "Hollingsworth/Brewer Desoto" site to be at Curtis Road and S.R. 70. Walter Brewer admitted during his deposition that the S.R. 70/Curtis Road intersection was the site of the Brewer property. The document identified the site owner as V.C. Hollingsworth, Jr., and the site manager to be Jim Brewer. The "facility name" was identified as Blue Septic Tank Services, Inc. In addition, the Bowens produced a copy of a letter dated May 11, 2001, on DEP letterhead addressed to "Mr. Jack Myers, Blue Septic Tank Services, Inc." The letter identified sites with "current" residual landspreading, including Hollingsworth/Brewer sites in both DeSoto and Manatee Counties.
Further, the Bowens found and offered a document headed "Landowner Request & Consent for Biosolids" with the imprinted name of "Blue Environmental." The "Landsite Name" on the document was Hollingsworth/Brewer; the "Owner" was identified as V.C. Hollingsworth, Jr.; and the "operator or Manager" was Jim Brewer/V.C. Hollingsworth, Jr. The document *761 was signed by V.C. Hollingsworth, Jr., and included a certification that the signor was authorized to give consent for the "beneficial reuse and land application of biosolids."
The trial court conducted a hearing on the Brewers' motion on December 16, 2004, and issued the order currently under review. In the order the trial court stated:
In this case, neither the Plaintiffs nor their attorneys obtained any documents or statements from the sludge-hauling companies or their employees, either before or after suit was filed, to indicate that sewage sludge was being spread on the BREWERS' property. Neither the Plaintiffs nor their attorneys made any aerial surveillance of the BREWERS' property before or after suit was filed. Plaintiffs deposed Walter Brewer on April 22, 2003, at which time he testified that at no time had sewage sludge ever been applied to the property owned by the BREWERS. At the hearing on summary judgment in this case in November 2003, the Plaintiffs could produce no documentation to refute Walter Brewer's deposition testimony. At the hearing on the instant motions, Plaintiffs could only offer the affidavit of Molly Bowen, stating that she had seen sludge trucks entering the common point used by both the BREWERS and HOLLINGSWORTH to access their respective properties.
Based on the foregoing, the Plaintiffs and their attorneys should have known either before or shortly after suit was filed that the allegations against the BREWERS were unfounded.

DISCUSSION
Section 57.105(1) provides for the award of attorney's fees in any action:
[I]n which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
This court has held that "[a] finding that a party is entitled to recover attorney's fees under section 57.105 must be based upon substantial, competent evidence presented at the hearing on attorney's fees or otherwise before the court and in the record." Mason v. Highlands County Bd. of County Comm'rs, 817 So.2d 922, 923 (Fla. 2d DCA 2002). It is also true that "courts have made clear that an award of fees may not be appropriate under section 57.105, even though the party seeking fees was successful in obtaining the dismissal of the action." Read v. Taylor, 832 So.2d 219, 222 (Fla. 4th DCA 2002) (holding that the claims were not so completely lacking in factual or legal basis as to warrant an award of fees under section 57.105). In Cowgill v. Bank of America, 831 So.2d 241, 242 (Fla. 2d DCA 2002), this court reversed an award of fees under the 2000 version of section 57.105(1) because the "claim was arguably supported by material facts and then-existing law."
The trial court's finding that the Bowens "should have known either before or shortly after suit was filed that the allegations against the BREWERS were unfounded," is not supported by the record. In making its findings, the trial court overlooked what knowledge the Bowens actually had and instead concentrated on what the Bowens failed to do, both in the presuit stage and after suit was filed.
*762 Making a presuit determination that a founded claim or defense exists, and against whom it exists, lies at the heart of section 57.105. The legislature has made it very clear, especially in recent amendments to the statute, that shooting first and asking questions later is unacceptable. Litigants must know, or through reasonable effort become able to know, that their claims and defenses are supportable by facts and have a basis in law. The statute does not give specific direction on how to meet these standards. Ultimately, that is left to the discretion of the trial judge.
In this case, we conclude that obtaining documents and statements from the sludge-hauling companies and conducting aerial surveillance were not indispensable presuit requirements. Such fact-gathering approaches have a high potential for futility[4] or failure.[5] More important, the trial court failed to take into consideration that the Bowens had the documents described above as well as Molly Bowen's observations of the sludge truck activity before the suit was filed.
After suit was filed, an unfortunate set of circumstances followed. The Brewers immediately put the Bowens on notice that they were making a serious mistake. The Bowens pledged to the Brewers that if they were in error by joining the Brewers in their suit, they would ultimately rectify the situation. The communication between counsel for the Brewers and counsel for the Bowens, at least on the surface, showed a sincere motive on each side's part to get to the bottom of the matter quickly and then immediately fix what was not right. Unfortunately, each side had different and opposing ideas on how to go about doing that. The Bowens wanted expeditious fact gathering by either waiving or being flexible with the formal requirements of discovery. The Brewers insisted on proceeding formally by strict adherence to the rules of discovery. The divergent approaches resulted in numerous court filings causing distractions, delay, and expense. Ultimately, neither side gained what each declared they had wanted  a shared knowledge of the actual truth.
While section 57.105 requires claimants to continuously evaluate the merits of their claims after suit is filed, here, regrettably, post-suit efforts got bogged down in fact-gathering quarrels. Walter Brewer's deposition testimony was, to some extent, refuted by the documents described above and thus was legally insufficient to bring the Bowens to the "knew or should have known" juncture. Therefore, by the time the suit against the Brewers was dismissed at summary judgment, nothing new was added to support the Brewers' section 57.105 claim.
Winning a motion for summary judgment does not conclusively prove a section 57.105 claim.[6]Read, 832 So.2d at 222. If that were the standard, then every award of summary judgment would be followed by a section 57.105 motion. The trial court's task at summary judgment *763 hearings is separate and distinct from section 57.105 hearings. The former is a proceeding based on established facts. The latter is an inquiry into what the losing party knew or should have known during the fact-establishment process, both before and after suit is filed.
Molly Bowen's statement was competent, substantial evidence, and that, together with the documentary evidence in the Bowens' possession, does not support the trial court's finding that the Bowens "knew or should have known" there were no facts to support their claim against the Brewers. The trial court not only failed to consider this documentary evidence, which is competent and substantial, but it also failed to acknowledge its existence. Finally, the actual reasons the trial court gave for granting the motion, the Bowens' purported discovery failures, were either insufficient or unrealistic. Accordingly, we find that the trial court's failure to consider all of the evidence in deciding to grant the section 57.105 motion was an abuse of discretion.
As stated in Read, "Florida favors access to the courts and has interpreted section 57.105 to provide a remedy only where the plaintiff's complaint is completely untenable." Id. Accordingly we reverse the award of attorney's fees to the Brewers under section 57.105 and deny their cross-appeal for expert witness fees. We affirm the cost award under section 57.041.
Affirmed in part; reversed in part.
SALCINES and WALLACE, JJ., Concur.
NOTES
[1] The attorneys appealing the trial court's award of fees are Eric S. Giroux, Esq.; David Guest, Esq.; and Earthjustice Legal Defense Fund, Inc.
[2] Hollingsworth is not subject to the trial court's order and is not involved in this appeal.
[3] The reference by Mr. Brewer is apparently to Blue Septic Tank Service, Inc., one of the defendants in the trial court action.
[4] While asking for statements or documents from parties doing business with someone the requesting party is about to sue could be fruitful, it is not likely to be productive. It is not much of a stretch for the sludge-hauling companies to deduce that they too are targets of a lawsuit by the party making the requests.
[5] The cost of aerial surveillance with appropriately sophisticated spying equipment would be very high in comparison to the benefit of a likelihood of actually obtaining useful evidence.
[6] Here it is not at all clear that there were no disputes of material fact and that summary judgment was appropriate, but that question is not before us.