986 So.2d 620 (2007)
Patricia SALAZAR, individually, and as the natural parent and sole legal guardian of Tania Buendia Salazar, a minor child, and as personal representative of the Estate of Marcos Buendia Avila, deceased, and Podhurst Orseck, P.A., Appellants/Cross-Appellees,
v.
HELICOPTER STRUCTURAL & MAINTENANCE, INC., Appellee/Cross-Appellant, and
Garlick Helicopters, Inc., a foreign corporation; Rolls-Royce Corporation f/k/a Allison Engine Corporation, a foreign corporation; Dixie Jet & Rotor Services, LLC, a Florida corporation; Azzmac Helicopter Center, Inc., a Florida corporation; and Hernando Jet Center, Inc., a Florida corporation, Appellees.
No. 2D07-33.
District Court of Appeal of Florida, Second District.
November 7, 2007.
*621 Stephen F. Rosenthal of Podhurst Orseck, P.A., Miami, for Appellants/Cross-Appellees.
Marion Hale and Sharon E. Krick of Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater, for Appellee/Cross-Appellant.
No appearance for Appellees Garlick Helicopters, Inc.; Rolls-Royce Corporation f/k/a Allison Engine Corporation; Dixie Jet & Rotor Services, LLC; Azzmac Helicopter Center; and Hernando Jet Center, Inc.
STRINGER, Judge.
Patricia Salazar, plaintiff below, and her attorneys, Podhurst Orseck, P.A. (together "Appellants"), seek review of the trial court's order awarding defendant Helicopter Structural & Maintenance, Inc. ("HSM"), $21,540.35 in attorney's fees pursuant to section 57.105, Florida Statutes (2005). HSM cross-appeals the portion of the order that reduced the fee award by the amount of insurance coverage. We reverse because the trial court abused its discretion in determining that Appellants knew or should have known that their claims against HSM were not supported by the material facts. Our reversal renders HSM's cross-appeal moot.
This case arises out of a 2004 helicopter accident caused by an engine failure. The crash killed Marcos Avila and seriously injured his wife, Patricia Salazar, their daughter, and three other passengers. On January 9, 2005, Patricia Salazar filed this lawsuit asserting claims on behalf of herself, her minor daughter, and her husband's estate (together "Plaintiffs"), against five corporations that had serviced, tested, inspected, or modified the parts of the helicopter that failed and caused the fatal crash.
In October 2005, Plaintiffs amended the complaint to add HSM as a defendant. The complaint alleged that the helicopter's "engine, main rotor and/or tail rotor drive system, including but not limited to the `free-wheeling unit' and associated component parts failed." The complaint alleged that HSM was liable for its work done on, among other things, the "main and tail rotor drive system and associated component parts such as the free wheeling unit." In support of their allegations, Plaintiffs relied on an HSM invoice that showed that HSM performed over $23,000 of work on the helicopter before the accident, including work on the drive train, one of the components alleged to have failed during the accident. Specifically, the invoice states that HSM performed the following work on the helicopter:
A. Removed and replaced R/H and L/H Fwd upper longeron channels.
B. Removed and replaced R/H and L/H upper forward skins.
C. Removed and replaced R/H and L/H upper aft skins.
D. Performed drivetrain alignment and shim as necessary to return to service.
Additionally, the invoice listed several shims as parts used in the repair. There is no dispute that HSM was aware of the existence of this invoice.
In December 2005, counsel for HSM sent Plaintiffs a letter in which counsel asserted that HSM was an improperly named defendant because it had not done any repair work on the engine and threatened Plaintiffs with sanctions unless they dismissed their claim. HSM subsequently served Plaintiffs' counsel with a formal *622 motion for sanctions pursuant to section 57.105. In the motion, HSM alleged that all of the work it performed on the helicopter was performed on the fuselage/cabin skin. HSM asserted that it received the fuselage/cabin section only and did not have possession of the engine.
Plaintiffs' counsel responded by stating that it would dismiss HSM from the lawsuit if the other defendants would agree not to list HSM as a Fabre[1] defendant. Counsel also asked HSM to waive the statute of limitations so Plaintiffs could later join HSM if discovery revealed some liability on its part. HSM did not respond to this offer and filed a motion for summary judgment. HSM attached a short affidavit from HSM's president, Charles Brammer, to its summary judgment motion. In the affidavit, Brammer echoed HSM's previous assertions that HSM worked "only on the helicopter's fuselage/cabin skin" and that the helicopter did not have the engine in it at the time. Brammer concluded that "HSM never had possession of any of the drive train components of the helicopter, including the main/tail rotor drive system, engine transmission, freewheeling unit, or the tail boom assembly, including the tail rotor drive train."
Plaintiffs chose not to contest HSM's motion for summary judgment. As Plaintiffs' counsel explained at the sanctions hearing, if HSM really did not work on the engine and no other defendant was going to assert that it did and raise a Fabre issue, then Plaintiffs were "happy not to have an extra Defendant in the case." Plaintiffs' counsel sent HSM's attorney a proposed order granting HSM's motion for summary judgment so the motion could be granted without a hearing. HSM refused the offer and insisted upon having a hearing. Plaintiffs' counsel then filed a cross-motion for summary judgment, which incorporated by reference the arguments and facts set forth in HSM's motion and moved for "summary judgment on any asserted or potential Fabre affirmative defenses asserting the fault of HSM."
At the hearing on HSM's motion for summary judgment, counsel for codefendant Hernando Jet opposed the motion. Counsel asserted that HSM's invoice indicated that they did indeed do work on the helicopter's engine. However, the trial court refused to take notice of the invoice because Hernando Jet did not produce it at the hearing. Announcing that it was "bound by this record,"[2] the court granted HSM's motion for summary judgment. The court refused to rule on Plaintiffs' cross-motion for summary judgment because it had not been noticed for hearing.
HSM pressed forward with its motion for sanctions, and the trial court held a hearing on the motion. Appellants filed the affidavit of their aircraft maintenance and accident reconstruction expert, Donald Sommer,[3] to explain their basis for believing that HSM performed work on the engine. Sommer explained why, in his professional opinion, the HSM invoice indicated that HSM had performed work on the helicopter engine:

*623 6. As part of the scope of the work performed, HSM stated that it "performed drive-train alignment and shim as necessary to return to service."
7. The drive-train component parts include the helicopter's engine, transmission, main-rotor and tail-rotor drive systems, including the helicopter's free-wheeling unit.
8. It is my opinion as an expert in aircraft maintenance that HSM was in possession of these component parts and conducted maintenance on the drive-train system of the subject helicopter as part of the service and repairs set forth in the work order.
9. To return the subject aircraft to service, as an authorized repair station operating under FAA Rules and Regulations, HSM had to certify the aircraft was airworthy.
10. Anytime a repair facility conducts maintenance on drive train component systems it is essential that they operate the aircraft following such maintenance before they can certify it as airworthy and return it to service.
11. As an expert in aircraft maintenance and accident reconstruction, it is my opinion that there was a good faith basis to make a claim against HSM for a failure of the drive-train components HSM worked on and certified were airworthy.
The trial court held that Appellants had sufficient cause to file the complaint against HSM, but concluded that "25 days after the filing of the motion for summary judgment and the affidavit of HSM's president, Charles Brammer, [Appellants] knew or should have known that their claims against HSM were not supported by the material facts necessary to establish the claims." Thus, the court awarded HSM $21,540.35, which it allocated fifty percent against Plaintiffs and fifty percent against Plaintiffs' counsel.
We review the award of section 57.105 attorney's fees for an abuse of discretion. Peyton v. Horner, 920 So.2d 180, 183 (Fla. 2d DCA 2006). Section 57.105 provides for attorney's fees for the prevailing party if "the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial . . . [w]as not supported by the material facts necessary to establish the claim or defense." Id. Although the statute was modified in 1999 to expand the court's power to award attorney's fees in cases where a claim is asserted without an adequate factual basis, it is still intended to preclude frivolous pleadings. Id.
In that vein, a summary judgment does not automatically entitle the prevailing party to an award of section 57.105 fees. Bowen v. Brewer, 936 So.2d 757, 762 (Fla. 2d DCA 2006); Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So.2d 520, 523 (Fla. 1st DCA 2003).
The trial court's task at summary judgment hearings is separate and distinct from section 57.105 hearings. The former is a proceeding based on established facts. The latter is an inquiry into what the losing party knew or should have known during the fact-establishment process, both before and after suit is filed.
Bowen, 936 So.2d at 762-63.
In this case, the complaint alleged that the helicopter's "engine, main rotor and/or tail rotor drive system, including but not limited to the `free-wheeling unit' and associated component parts failed." The complaint also alleged that HSM was *624 liable for its work done on, among other things, the "main and tail rotor drive system and associated component parts such as the free wheeling unit." In support of this claim, Plaintiffs relied on an invoice which stated that HSM had "[p]erformed drivetrain alignment and shim as necessary to return to service." According to Plaintiffs' expert, the drive train component parts include the helicopter's engine, transmission, and main-rotor and tail-rotor drive systems, including the helicopter's free-wheeling unit.
Thus, at the time Plaintiffs' counsel filed suit, Appellants had a sufficient factual basis to believe that HSM performed some work on the very part of the helicopter that failed. The question is whether the Brammer affidavit contradicted this factual basis to such an extent as to render any further proceedings frivolous. The answer is clearly no. Brammer admitted that HSM maintenanced the helicopter but asserted that it worked "only on the helicopter's fuselage/cabin skin." Brammer asserted HSM never had possession of the engine or "any of the drive train components of the helicopter, including the main/tail rotor drive system, engine transmission, freewheeling unit, or the tail boom assembly, including the tail rotor drive train." However, Brammer did not explain how HSM performed a drive train alignment and shim without the drive train component parts. Thus, it could not be said that the Brammer affidavit established that Plaintiffs' claim against HSM was not supported by the material facts.
The trial court granted summary judgment based on unrefuted evidence presented by HSM, but Appellants established they were in possession of contradictory evidence at the time summary judgment was granted. In granting HSM's motion for attorney's fees, the trial court failed to consider what knowledge Plaintiffs actually had and concentrated on what they failed to do to oppose HSM's motion for summary judgment. This was error.
Furthermore, Plaintiffs did not force HSM to summary judgment, but expressed their willingness to dismiss HSM from the case provided that HSM would waive the statute of limitations and help Plaintiffs secure agreements from the other defendants not to assert Fabre defenses against HSM. By filing a motion for summary judgment, HSM put Plaintiffs in the classic Catch-22 situation. Plaintiffs did not want to oppose summary judgment, but there was a possibility that discovery would reveal some liability on HSM's part. A voluntary dismissal would leave Plaintiffs with no recovery if the statute of limitations expired. A summary judgment, however, could at least preclude HSM from being found liable as a Fabre defendant. Plaintiffs should not have been forced to unnecessarily oppose summary judgment to avoid section 57.105 sanctions.
Based upon this analysis, we conclude that the trial court abused its discretion in determining that Appellants knew or should have known that their claims against HSM were not supported by the material facts. We therefore reverse the final judgment awarding HSM attorney's fees pursuant to section 57.105. Our reversal on direct appeal renders HSM's cross-appeal moot.
Reversed.
WHATLEY and SALCINES, JJ., Concur.
NOTES
[1] A "Fabre defendant" is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged. See Fabre v. Marin, 623 So.2d 1182 (Fla. 1993).
[2] Judge Holder said, "What do you want me to do? I'm bound by this record. Believe me, the one time I deviated from the record, I got a spear thrown from 2 miles away right through my heart by the Second DCA and it hurt like heck."
[3] Mr. Sommer is a mechanical and aerospace engineer with thirty-five years of aviation experience who has handled major commercial airline disasters.