DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**ORLANDO SANCHEZ,**
Appellant,

v.

**CITY OF WEST PALM BEACH,**
Appellee.

No. 4D13-4819

[September 3, 2014]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 502013-CA011598-MB-AI.

Michael F. Amezaga of Orner & Orner, P.L.L.C., Boca Raton, for appellant.

Christopher Van Hall, West Palm Beach, for appellee.

GROSS, J.

In a forfeiture proceeding under the Florida Contraband Forfeiture Act, §§ 932.701-932.706, Florida Statutes (2013) (the "Act"), Orlando Sanchez appeals from a non-final order entered after an adversarial preliminary hearing finding probable cause to support the City of West Palm Beach's continued seizure of $11,165.00 in U.S. currency. Because the circuit court prevented Sanchez from calling witnesses and introducing evidence at the hearing, we reverse and remand for a new adversarial preliminary hearing.

### Factual Background

In July 2013, West Palm Beach police officers seized $11,165.00 in U.S. currency from Sanchez pursuant to the Act on the belief the money had been acquired from illegal gambling. As provided by section 932.703(2)(a), Florida Statutes (2013), Sanchez requested the trial court conduct an adversarial preliminary hearing. The trial court held a hearing pursuant to section 932.703(2)(c), for the purpose of determining whether there was

probable cause to believe the currency had been or was being used in violation of the Act.  Prior to the hearing, counsel for Sanchez submitted a memorandum of law in support of his position, describing the parties' evidentiary burden under *Wright v. Florida Department of Highway Safety & Motor Vehicles*, 531 So. 2d 352, 355 (Fla. 1st DCA 1988), a case decided prior to the enactment of the current version of the Act.

*The Preliminary Adversarial Hearing*

At the hearing, an officer testified that on July 3, 2013, at about 11:30 p.m., he pulled over Sanchez's vehicle after observing it run two stop signs. Upon approaching the vehicle, the officer "instantly smelled marijuana" emanating from Sanchez's rolled-down window, leading the officer to call for backup.  When a second officer arrived and confirmed the marijuana odor, the two removed Sanchez and proceeded to search his vehicle.

After pinpointing the smell to the vehicle's center console, the first officer opened a red paper shopping bag believing it would contain "a large amount of marijuana."  As it turned out, the bag contained eight hundred dollars in loose cash along with "two blocks" of U.S. currency bound by rubber bands, each consisting of $5,000 in twenty-dollar bills. Underneath the shopping bag, the officers located a misdemeanor amount of marijuana.  The record does not reflect how the amount of marijuana seized produced the extent of the odor the officers described.

Believing the currency to be the proceeds of a narcotics sale, the first officer questioned Sanchez regarding the source of the cash, to which Sanchez responded that he had won it at the dog track.  Following continued questioning, however, Sanchez changed his story, stating the he "won it [at] a friend's house playing poker."  Since residential gambling is illegal, the first officer seized the cash along with three hundred sixty-five dollars found on Sanchez's person.

In his defense, Sanchez denied saying that he had been gambling at a friend's house.  He testified that he was a professional gambler and that he had won the seized currency during a successful night at the Palm Beach Kennel Club.  To corroborate his claims, Sanchez offered into evidence gambling tickets and racing programs from the Kennel Club, all dated July 3, 2013, claiming they were in his car at the time of the search. In addition, Sanchez submitted tax returns, in which he accounted for his prior gambling winnings.

Although the City objected to this evidence, claiming that (1) Sanchez was not permitted to introduce documentary evidence at an adversarial preliminary hearing that was unknown to the state at the time of the seizure, and (2) the evidence was otherwise irrelevant to whether the first

officer had probable cause to seize the currency, the court considered these documents.

To further support his claim, Sanchez sought to call a Kennel Club employee to testify (1) that he saw Sanchez at the Kennel Club on the night in question, (2) that "anyone can claim their cash winnings in $20 bills," and (3) that he heard Sanchez scream "I won" in Spanish. The trial court excluded the witness, finding that Sanchez had already made a sufficient showing to negate the City's claim of probable cause. The trial court cautioned, however, that the probable cause determination was "without prejudice,"[1] meaning the City could "come back" when it had more evidence.

## Motion for Reconsideration

The following week, the City moved for reconsideration, contending Sanchez's recitation of the parties' evidentiary burdens was erroneous as an "incomplete citation based on a case [*Wright*] that preceded the current forfeiture statutory scheme." Under the applicable scheme, the City averred that the sole purpose of an adversarial preliminary hearing is to determine whether the seizing agency has probable cause to believe the property subject to forfeiture was used in violation of the Act. Thus, the City argued, Sanchez's testimony regarding his gambling career along with the inclusion of the gambling tickets, the racing programs, and the Kennel Club employee's testimony was irrelevant since such evidence was not privy to the seizing agency at the time of the seizure.

The trial court agreed and granted the City's motion for reconsideration, finding that it mistakenly relied upon *Wright* to justify admitting "testimony relating to [Sanchez's] occupation, income sources, ownership rights to the currency, and whereabouts on or about July 3, 2013 that related to the source of the Currency" along with "documentary evidence that included gambling receipts, gambling programs, and income tax returns." As a result, the trial court stated that it would "reconsider the evidence presented . . . pursuant to the appropriate standards."

## Evidentiary Hearing on Reconsideration

Having granted the City's motion for reconsideration, the trial court conducted a second adversarial preliminary hearing. The City re-called the officers to testify that they found no gambling receipts or racing programs within Sanchez's car at the time they seized the currency.

---

[1]Because this order was later withdrawn, we do not address this curious order. It would seem that the Act and Supreme Court precedent entitle an interested party to a timely ruling on the issue of probable cause.

After the City rested, Sanchez again took the stand. As before, Sanchez sought to admit the gambling receipts, the racing programs, and the Kennel Club employee's testimony. Upon the City's objection, however, the trial court barred Sanchez from proceeding, finding the evidence to be outside the scope of the adversarial preliminary hearing. As a result, since the City's largely unrebutted evidence established that Sanchez admitted to receiving the money through illegal gambling, the trial court ruled the City had probable cause to believe the seized currency was used in violation of the Act.

### The Florida Contraband Forfeiture Act

Under the Florida Contraband Forfeiture Act, real or personal property "used in violation of any provision of the [Act,] or in, upon, or by means of which any violation of the [Act] has taken or is taking place," may be seized and ultimately forfeited through civil proceedings. § 932.703(1)(a), Fla. Stat. (2013); *see also City of Coral Springs v. Forfeiture of a 1997 Ford Ranger Pickup Truck VIN No. 1FTCR10A4VTA62475 FL Tag 3U16BDE*, 803 So. 2d 847, 849-50 (Fla. 4th DCA 2002). To effectuate a forfeiture under the Act, the seizing agency must engage two stages: a seizure stage and a forfeiture stage. *See Gomez v. Vill. of Pinecrest*, 41 So. 3d 180, 184 (Fla. 2010). At the seizure stage, the trial court must determine "whether there is probable cause to believe that the property has been used in violation of the Act." *In re Forfeiture of: $221,898 in U.S. Currency*, 106 So. 3d 47, 49 (Fla. 2d DCA 2013) (citation omitted). If probable cause exists, the matter then proceeds to a subsequently scheduled forfeiture proceeding, during which "'the court or jury determines whether the subject property shall be forfeited.'" *Velez v. Miami-Dade Cnty. Police Dep't*, 934 So. 2d 1162, 1164 (Fla. 2006) (quoting § 932.701(2)(g), Fla. Stat. (2002)).

While now codified by sections 932.703 and 932.704, Florida Statutes (2013), this two-step approach to forfeiture proceedings has its origins in *Department of Law Enforcement v. Real Property*, 588 So. 2d 957 (Fla. 1991), a case concerning a due process challenge to the Act's then-current procedure. Prior to the *Real Property* decision, the abovementioned seizure and forfeiture stages were truncated into a single proceeding, initiated either by the State within 90 days of the seizure or by the claimant in an action to recover the property. § 932.703(1), 932.704(1), Fla. Stat. (1991). At the proceeding, the "governmental entity seeking forfeiture b[ore] the initial burden of going forward" by demonstrating "probable cause that the *res* subject to forfeiture was illicitly used within the meaning of the forfeiture statute." *In re Approximately Forty-Eight Thousand Nine Hundred Dollars ($48,900.00) in U.S. Currency*, 432 So. 2d 1382, 1385 (Fla. 4th DCA 1983). If this hurdle was cleared, the burden then shifted to the claimant "to rebut the probable cause showing, or by a preponderance of

the evidence, to establish that the forfeiture statute was not violated or that there is an affirmative defense which entitles the appellant to repossession of the item." *Lobo v. Metro-Dade Police Dep't*, 505 So. 2d 621, 623 (Fla. 3d DCA 1987).

The problem with this streamlined process, as the court noted in *Real Property*, was that it impinged upon the claimant's "compelling interest[] *to be heard* at the initiation of forfeiture proceedings against their property rights to assure that there [wa]s probable cause to believe that a person committed a crime using that property to justify a property restraint." 588 So. 2d at 964 (emphasis added). As Justice Barkett explained:

> Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2, Fla. Const.; *see Shriners Hosps. for Crippled Children v. Zrillic*, 563 So. 2d 64, 68 (Fla. 1990) (article I, section 2 protects all incidents of property ownership from infringement by the state unless regulations are reasonably necessary to secure the health, safety, good order, and general welfare of the public). Those property rights are particularly sensitive where residential property is at stake, because individuals unquestionably have constitutional privacy rights to be free from governmental intrusion in the sanctity of their homes and the maintenance of their personal lives. Art. I, §§ 2, 12, 23, Fla. Const. Additionally, Floridians have substantive rights to be free from excessive punishments under article I, section 17 of the Florida Constitution, and to have meaningful access to the courts pursuant to article I, section 21 of the Florida Constitution. All of these substantive rights necessarily must be protected by procedural safeguards *including notice and an opportunity to be heard.* Art. I, § 9, Fla. Const.; see *Hadley v. Department of Admin.*, 411 So. 2d 184 (Fla. 1982); *State ex rel. Gore v. Chillingworth*, 126 Fla. 645, 657–58, 171 So. 649, 654 (1936).

*Id.* (emphasis added). The resulting determination was that due process "requires that 'those claiming an interest in the property' be provided with notice and *the opportunity to be heard at each stage of the proceeding." City of Fort Lauderdale v. Baruch*, 718 So. 2d 843, 847 (Fla. 4th DCA 1998) (quoting *Real Property*, 588 So. 2d at 957) (emphasis added); *Sheffey v. Futch*, 250 So. 2d 907, 910 (Fla. 4th DCA 1971) ("[D]ue process has been defined in non-criminal situations as contemplating reasonable notice and an opportunity to appear and be heard." (citations omitted)).

To bring the Act's procedure in compliance with due process, the *Real Property* Court held that the initial seizure of property—whether real or personal—must be tethered to providing all interested parties with "notice" and an "opportunity for an adversarial preliminary hearing . . . as soon as possible." 688 So. 2d at 965. If requested, the adversarial preliminary hearing was required to take place "within ten days of the request" so that the trial court could "make a de novo determination as to whether probable cause exists to maintain the forfeiture action." *Id.* at 965.

In response to the *Real Property* decision, the Legislature amended the Act in 1992 to "create both the adversarial preliminary hearing and a category of 'person entitled to notice' who must be notified of the right to the hearing." *Velez*, 934 So. 2d at 1165; *see also* Ch. 92-54, §§ 1, 3, Laws of Fla. Consistent with due process, a person falling within this enumerated category "has the right to *litigate* the issue of probable cause at an adversarial preliminary hearing." *Chuck v. City of Homestead Police Dep't*, 888 So. 2d 736, 745 (Fla. 3d DCA 2004) (emphasis added). With regard to the evidence to be presented at the hearing, section 932.703(2)(c), Florida Statutes (2013), provides:

> When an adversarial preliminary hearing is held, the court shall review the verified affidavit and any other supporting documents and take any testimony to determine whether there is probable cause to believe that the property was used, is being used, was attempted to be used, or was intended to be used in violation of the Florida Contraband Forfeiture Act.

The focus of this statute is on the evidence of probable cause that exists at the time of the adversarial preliminary hearing, not just what the police officers knew at the time the property was seized. The wording of section 932.703(2)(c) compels the conclusion that, unlike a Fourth Amendment challenge, the pertinent inquiry at the adversarial preliminary hearing is "whether there '**is**' probable cause to believe that a violation of the Act occurred or is occurring, not whether there 'was' probable cause to believe that a violation of the Act occurred at the time of seizure." *Beary v. Bruce*, 804 So. 2d 579, 581 (Fla. 5th DCA 2002) (emphasis added); *see also City of Coral Springs v. Forfeiture of a 1997 Ford Ranger Pickup Truck VIN No. 1FTCR10A4VTA62475 FL Tag 3U1 6BDE*, 803 So. 2d 847, 850 (Fla. 4th DCA 2002) (stating that the question of importance is "'whether the information *relied upon by the state* is adequate and sufficiently reliable to warrant the belief by a reasonable person that a violation has occurred'") (quoting *Medious v. Dep't of Highway Safety & Motor Vehicles*, 534 So. 2d 729, 732 (Fla. 5th DCA 1988). This interpretation of the statute is consistent with the Supreme Court's identification in *Real Property* of the

constitutional interests at play; if the State cannot establish probable cause of a statutory violation early in the proceedings, its seizure of the property ends without the delay that would accompany a forfeiture trial. We note that "establishing the owner's actual or constructive knowledge"— i.e., whether the owner knew the property was being used in an illegal manner—is not required until the forfeiture trial. *Gomez,* 41 So. 3d at 181.

Because the section 932.703(2)(c) probable cause inquiry focuses on the evidence that exists at the time of the hearing, it makes no constitutional or statutory sense to force the "opposing" party at an "adversarial" hearing to remain mute when in possession of evidence capable of rebutting the agency's claims of a statutory violation. *See Velez,* 934 So. 2d at 1166 ("[I]n using the term 'adversarial,' the statute contemplates that the preliminary hearing would involve opposing parties." (citing *Black's Law Dictionary* 58 (8th ed. 2004))). To give full effect to the statutory scheme and to the requirements of due process, we reject the City's position that a claimant's evidence rebutting probable cause—evidence that the subject property is not the product of illegal conduct—is inappropriate at an adversarial preliminary hearing. *See Pope v. Pope*, 901 So. 2d 352, 353 (Fla. 1st DCA 2005) ("'Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on his behalf . . . , and the denial of this right is fundamental error.'") (quoting *Pettry v. Pettry*, 706 So. 2d 107, 108 (Fla. 5th DCA 1998); *Begens v. Begens,* 617 So. 2d 360, 361 (Fla. 4th DCA 1993) ("An opportunity to be heard includes the right to present evidence bearing on the issues."). Only where "no person entitled to notice requests an adversarial preliminary hearing" is the court's review limited to the traditional probable cause determination where the court "review[s] the complaint and the verified supporting affidavit to determine whether there was probable cause for the seizure." § 932.704(5)(b), Fla. Stat. (2013).

The evidence Sanchez sought to offer—his statements regarding his profession, his gambling receipts, the racing programs, and the testimony of the Kennel Club employee—falls within the scope of a preliminary adversarial hearing. As touched upon previously, the probable cause inquiry focuses on whether "the property subject to forfeiture was used in violation of the Forfeiture Act." *Velez,* 934 So. 2d at 1164. This is distinct from the issue of the claimant's knowledge, which relates to the seizing agency's required showing at the forfeiture stage "that the [claimant] either knew, or should have known after a reasonable inquiry, that the property was being employed or was likely to be employed in criminal activity." § 932.703(6)(a), Fla. Stat. (2013). Sanchez's evidence went to the heart of the probable cause determination—whether the currency seized was the product of illegal gambling. At the adversarial preliminary hearing, the City's sole evidence of the currency's illegality was Sanchez's purported

admission to the officers that the cash came from winnings at a residential poker game. To that end, Sanchez's employment, his gambling receipts, the programs, and the testimony of the Kennel Club employee were all pertinent to demonstrating the actual source of the money and whether the currency was the product of illegality at all.

We therefore reverse and remand for an adversarial probable cause hearing consistent with this opinion.

MAY and CIKLIN, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***