# Third District Court of Appeal

## State of Florida

Opinion filed February 25, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-393
Lower Tribunal No. 12-3730
_____

**In Re: Forfeiture of 100,000 Euros**
**Luis Felipe Ospina Garrido and Ospina Garrido e Hijos,**
Appellants,

vs.

**Miami-Dade Police Department,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Berrio & Berrio and Juan D. Berrio, for appellants.

Kimberly Redmon-Jones, for appellee.


Before WELLS, ROTHENBERG and LAGOA, JJ.

WELLS, Judge.

Luis Felipe Ospina Garrido and Ospina Garrido e Hijos (collectively Ospina), appeal from an order denying their motion for an award of attorney's fees[1] incurred for successfully defending a forfeiture action brought by the Miami-Dade Police Department ("MDPD"). For the following reasons, we reverse in part and remand with instructions.

On January 25, 2012, Ospina, a Colombian national, traveled from Bogota, Colombia to Miami, Florida. During the flight, Ospina filled out a U.S. Customs Declaration form declaring under oath that he was traveling on business and that he was carrying currency valued at more than $10,000.00. Upon arrival at Miami International Airport, Ospina was asked by a U.S. Customs official to declare the amount of currency he was carrying. Ospina declared €100,000.00. Ospina was then provided with another more detailed U.S. Customs form so that he could declare the value in dollars of the currency that he was carrying. Ospina completed the form declaring under oath that the €100,000.00 had a value of approximately $129,000.00; he also declared that he was bringing the currency into the country for the purpose of purchasing cellular telephones for resale in Colombia by his cellular telephone company, Ospina e Hijos. Ospina was asked to produce and

---

[1] Ospina also claims the trial court erred in denying a requested $10,014.00 in interest payments made by Ospina to Bancolombia during the months Ospina's money was retained by MDPD. We find no error in the trial court's determination that this claim was unsubstantiated and speculative and affirm that part of the order under review.

then produced the money which was secured in five Cambios Centauros envelopes, each containing forty €500 notes. On further questioning, Ospina advised agents that the money he carried, initially in the form of pesos, had come from several sources including a safe located in his home and different bank accounts at Bancolombia titled in his, his wife's, and his company's names. Ospina said that he had exchanged the pesos secured from these sources for euros at Cambios Centauros, a money exchange in Colombia. After several hours of questioning, the United States Attorney's office was contacted to determine whether the United States would investigate Ospina or take action against him. The United States Attorney's office declined. However, on the advice of its attorney, MDPD seized Ospina's funds.

The day after the funds were seized, agents visited Amistar Telecom Inc., one of the two entities identified by Ospina as one of his suppliers of cellular telephones. Amistar, an entity that bought and sold telephones, confirmed that Ospina in the past had purchased merchandise from Amistar on a monthly basis. It also provided invoices confirming Ospina's purchases and established that for the most part his purchases had been with cash. That same day, agents visited CT-Miami, the other business that Ospina had identified as one of his suppliers of cellular phones. As with Amistar, Ospino's statements regarding his frequent purchases of cellular telephones and equipment were confirmed with supporting

3

documents provided. Two days later, two Homeland Security agents inspected Ospina's business in Colombia and interviewed Ospina; they reported no illegal activity.

On February 2, 2012, almost a week after the investigation into Ospina was completed—an investigation which bore out Ospina's statements about the source and use of his funds—MDPD filed a verified forfeiture complaint. After citing to little more than the denomination of the euros at issue as purportedly supporting a belief that Ospina's funds were being brought into the country as either part of a drug trafficking or money laundering scheme,[2] the complaint asserted a single

_____

[2] As the dubious support for this proposition, MDPD cited a report from a news website:

> A 2010 report from the internet news site *Daily Mail* reported that after an eight month analysis, Britain's Serious and Organized Crime Agency (Soca) decided with the Treasury and Home Office to remove the 500 euro note from circulation in Britain. Soca's ban followed an investigation which revealed that 90 percent of the 500 euro notes in the United Kingdom were being used for criminal purposes. The analysis revealed that the 500 euro note was almost exclusively used by money launderers shifting cash for major crime gangs. . . . In 2006, Colombian financial regulators reported that three times as many 500 euro notes were exported out of Colombia when compared to the value of the 500 euro notes which were legally imported into Colombia. . . . **It has also been reported that Central and South American cocaine traffickers collect the 500 euro notes because they are easier to transport (e.g. a million dollars in $100 bills weigh about 22 pounds, while $1 million in €500 bills at the current exchange rate of about $1.38 per euro weighs about 3.5 pounds).** The report concluded that the 500 euro note continues to be exploited by organized crime to facilitate money laundering efforts; the notes have gained the nickname the "Bin Laden", because people

4

claim of bank fraud premised on Ospina's failure to make a declaration in Colombia that he was taking funds out of that country.[3]

After reiterating the factors relating to drug trafficking and money laundering at the subsequently held adversarial preliminary hearing before Judge Marcia Caballero, MDPD convinced the trial court, contrary to the law, to exclude Ospina's evidence that would demonstrate that he was engaged in a legitimate business transaction and that no probable cause existed for the continued seizure of his funds, arguing that such evidence could not be considered at this stage of the proceedings[4]:

> know they are out there but nobody ever sees them. wwwdailymail.co.uk, *Mail Online*, "how the 500 euro is financing a global crime wave of cocaine trafficking, the black market, and tax evasion, by Caroline Graham and Adam Luck, January 30, 2010."

(Emphasis in the original).

[3] The substance of the complaint was that Ospina had "transport[ed] . . . over $10,000.00 in U.S. currency or its foreign equivalent (100,000 euro) into the State of Florida from Colombia, with the intent to promote the carrying on of 'specified unlawful activity', to wit: bank fraud against the Central Bank of Colombia, done in furtherance of a scheme to conduct a financial transaction or transactions in whole or in part within the State of Florida, . . . a felony violation of Chapter 896."

[4] Contrary to MDPD's assertions such evidence is admissible at an adversarial preliminary hearing. See § 932.703(2)(a), Fla. Stat. (2011) (confirming that a person whose personal property has been seized has a right to an "***adversarial*** preliminary hearing after the seizure to determine whether probable cause exists to believe that such property has been or is being used in violation of the Florida Contraband Forfeiture Act") (emphasis added); § 932.703(2)(c ), Fla. Stat. (2011) ("When an ***adversarial*** preliminary hearing is held, the court shall review the verified affidavit and any other supporting documents and take ***any*** testimony to

MR. BERRIO [COUNSEL FOR OSPINA]: She objected to me introducing these documents.

MS. DIXON [FOR MDPD]: Because it would go to the ultimate issue of fact, Your Honor. As you know and you are aware that under the law that at a probable cause hearing all the Judge is to do is to establish whether or not we have probable cause.

If that document is taken into consideration . . . it would then go to the ultimate issue of fact, which is not to be determined at the probable cause hearing. It is to be determined at the second stage, Your Honor.

On the resulting lopsided presentation, on March 2, 2012, probable cause to continue to hold Ospina's funds was found to exist. That same day Ospina filed his motion to dismiss. Sixty days later he filed a motion for summary judgment. On July 26, 2012, the two motions were heard, and on October 5, 2012, after MDPD had held the funds at issue for over eight months, summary judgment was granted on a finding that no illegality had been demonstrated to exist.

---

determine whether there is probable cause to believe that the property was used, is being used, was attempted to be used, or was intended to be used in violation of the Florida Contraband Forfeiture Act.") (emphasis added); Sanchez v. City of West Palm Beach, 149 So. 3d 92, 97 (Fla. 4th DCA 2014) ("Because the section 932.703(2) (c) probable cause inquiry focuses on the evidence that exists at the time of the hearing, it makes no constitutional or statutory sense to force the 'opposing' party at an 'adversarial' hearing to remain mute when in possession of evidence capable of rebutting the agency's claims of a statutory violation. To give full effect to the statutory scheme and to the requirements of due process, we reject the City's position that a claimant's evidence rebutting probable cause—evidence that the subject property is not the product of illegal conduct—is inappropriate at an adversarial preliminary hearing.") (citation omitted).

No appeal was prosecuted from this determination, and Ospina's funds were returned to him nineteen days later. Ospina thereafter moved for an award of damages which was granted in part[5] by a successor judge.[6] He also moved for an award of attorneys' fees under both section 932.704(10)[7] and section 57.105[8, 9] of

---

[5] Ospina sought: a twenty percent (20%) return on the property seized equal to $25,800.00 for lost business; the cost of five round trip tickets from Bogota to Miami and rental car expenses of $3,741.62.93; compensatory damages for property devaluation in the amount of $1,480.00 during the nine months the money was retained; damages in the amount of $12,889.00 for the sale of two vehicles below market price in order to meet daily living expenses; and interest on payment on lines of credit equaling $10,014.00. The trial court found Ospina entitled to: the devaluation of the property during the nine months MDPD retained it ($1,480); two round trip airline tickets to defend the lawsuit ($962.66); one car rental day ($43.29) for the day that Ospina travelled to meet for settlement negotiations; interest of 0.75% compounded monthly for ten months on $129,000.00 U.S currency ($808), for a total amount of damages of $3,293.95.

[6] The motion was ruled upon by Judge Arzola who had taken over the division from Judge Caballero.

[7] Section 932.704(10) provides:

(10) The court shall award reasonable attorney's fees and costs, up to a limit of $1,000, to the claimant at the close of the adversarial preliminary hearing if the court makes a finding of no probable cause. When the claimant prevails, at the close of forfeiture proceedings and any appeal, the court shall award reasonable trial attorney's fees and costs to the claimant if the court finds that the seizing agency has not proceeded at any stage of the proceedings in good faith or that the seizing agency's action which precipitated the forfeiture proceedings was a gross abuse of the agency's discretion. The court may order the seizing agency to pay the awarded attorney's fees and costs from the appropriate contraband forfeiture trust fund. Nothing in this subsection precludes any party from electing to seek attorney's fees and costs under chapter 57 or other applicable law.

the Florida Statutes. The motion was denied on both grounds chiefly because the trial court found that Ospina had "an opportunity to present evidence, and an opportunity to examine witnesses" at the preliminary adversarial hearing following which Judge Caballero had found probable cause existed to seize Ospina's funds.

A probable cause determination following a first stage adversarial preliminary hearing does not, however, preclude an attorney's fee award following a second stage summary judgment or trial determination.[10] This is so because a

_____

§ 932.704(10), Fla. Stat. (2011).

[8] Section 57.105, provides:

> (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
>
> (a) Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b) Would not be supported by the application of then-existing law to those material facts.

§ 57.105(1), Fla. Stat. (2011).

[9] Ospina's March 2, 2012 Motion to Dismiss had likewise asserted a claim for fees pursuant to both statutes.

[10] See Sanchez, 149 So. 3d at 95 (confirming that Florida's Contraband Forfeiture Act establishes a two stage procedure: the first stage being the seizure stage where

8

probable cause determination during a first stage proceeding is required before a second stage may proceed, and as section 932.704(10) makes clear, attorney's fees may be awarded when it has been shown that "the seizing agency has not proceeded *at any stage* of the proceedings in good faith or that the seizing agency's action which precipitated the forfeiture proceedings was a gross abuse of the agency's discretion." (emphasis added); see Cobb v. Langworthy, 909 So. 2d 416, 417 (Fla. 5th DCA 2005) (affirming an award of attorney's fees to a successful property owner following a stage two judgment which necessarily was preceded by a stage one finding of probable cause); see also In re Forfeiture of: 1997 Jeep Cherokee, 898 So. 2d 223, 224-25 (Fla. 2d DCA 2005) (addressing a claim for attorney's fees under section 932.704(10) following a stage one probable cause determination and an agency dismissal during stage two proceedings).

Here, neither the fact that Judge Caballero found probable cause nor the factors on which she relied to reach that determination support a conclusion that MDPD acted in good faith in these proceedings. This is so not only because Ospina was not accorded the opportunity to present evidence, and in fact was

the trial court must determine whether probable cause exists to believe that the property at issue was used in violation of the act, the second stage being a forfeiture proceeding where a court or jury determines whether the property shall be forfeited); Patel v. State, 141 So. 3d 1239, 1244 (Fla. 5th DCA 2014) (stating that in Florida, forfeiture proceedings are a two-stage process, the first involving seizure "where, if an adversarial preliminary hearing is held," the seizing agency must establish probable cause and the second involving a determination by a court or jury as to whether the property at issue will be forfeited).

stymied in doing so by MDPD at the preliminary hearing, but also because MDPD

knew before the forfeiture petition was filed that Ospina's account of his actions

and intentions was unrefuted and that no "sufficient **probability [existed] to**

**warrant a reasonable belief** that [the] currency was connected to criminal

activity." In re Forfeiture of One Hundred Seventy-One Thousand Nine Hundred

Dollars ($171,900) in U.S. Currency, 711 So. 2d 1269, 1274 n.8 (Fla. 3d DCA

1998).

On this record a lack of good faith that would support a fee award under

section 932.704(10) was demonstrated. So too was entitlement to an award of fees

under section 57.105. Addressing Ospina's claim to a fee award under that

provision, the trial court concluded:

> This court finds that the summary judgment . . . standard is not
> equivalent to the finding of frivolousness required by Section 57.105
> for an award of attorney's fees. Whitten v. Progressive Cas. Ins. Co.,
> 410 So. 2d 501, 506 (Fla. 1982) disapproved of by Florida Patient's
> Comp. Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985). "The statute
> provides that a party is entitled to an award of attorney's fees only
> when the court determines that there was a complete absence of a
> justiciable issue raised by the losing party. Without such a finding, an
> order assessing attorney's fees is technically deficient and must be
> reversed". Whitten v. Progressive Cas. Ins. Co., 410 So. 2d 501, 506
> (Fla. 1982) disapproved of by Florida Patient's Comp. Fund v. Rowe,
> 472 So. 2d 1145 (Fla. 1985). See Allen v. Estate of Dutton, 394 So. 2d
> 132, 135 (Fla. 5th DCA 1980); City of Miami Beach v. Town of Bay
> Harbor Islands, 380 So.2d 1112, 1113 (Fla. 3d DCA 1980); but see
> Autorico, Inc. v. Government Employees Insurance Co., 398 So. 2d
> 485, 488 (Fla. 3d DCA 1981).

The granting of summary judgment does not equal to the frivolousness standard set forth in §57.105, Fla. Stat. (2012). Furthermore, probable cause was found in this case, which would take it outside of any potential frivolousness argument.[11]

The trial judge was correct in concluding that an order granting summary judgment standing alone does not mandate an award of fees pursuant to section 57.105. See Salazar v. Helicopter Structural & Maintenance, Inc., 986 So. 2d 620, 623 (Fla. 2d DCA 2007) ("[A] summary judgment does not automatically entitle the prevailing party to an award of section 57.105 fees. Bowen v. Brewer, 936 So. 2d 757, 762 (Fla. 2d DCA 2006); Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So. 2d 520, 523 (Fla. 1st DCA 2003)."). He was nonetheless wrong in rejecting out of hand the claim for fees under section 57.105, where as here, neither the facts nor the law supported in any fashion, the forfeiture sought. See Albritton v. Ferrera, 913 So. 2d 5, 10 (Fla. 1st DCA 2005) ("[O]nce a party learns its claim or defense is not supported by the facts or law, it must drop the claim or defense, or

---

[11] Contrary to this finding and the case law on which it relied, "[s]ection 57.105 does not require a finding of frivolousness to justify sanctions, but only a finding that the claim lacked a basis in material fact or then existing law." Martin Cnty. Conservation Alliance v. Martin Cnty., 73 So. 3d 856, 858 (Fla. 1st DCA 2011); see Long v. AvMed, Inc., 14 So. 3d 1264, 1265 (Fla. 1st DCA 2009) ("Fees are appropriate under section 57.105(1) when the party or the parties' attorney pursued a claim or defense that is without factual or legal merit."). "Importantly, section 57.105 'does not require a party seeking fees to show the complete absence of a justiciable issue of fact or law, but permits fees to be recovered for any claim or defense that is insufficiently supported.'" Long, 14 So. 3d at 1265 (quoting Gopman v. Dep't of Educ., 974 So. 2d 1208, 1210 (Fla. 1st DCA 2008)); see Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So. 2d 520, 523 (Fla. 1st DCA 2003); see, e.g., In re Forfeiture of 1997 Jeep Cherokee, 898 So. 2d at 224.

risk imposition of section 57.105 attorney's fees on the non-meritorious claim or defense."); <u>In re Forfeiture of 1997 Jeep Cherokee</u>, 898 So. 2d at 224 (awarding 57.105 fees notwithstanding "[a]t the preliminary hearing, the trial court found that probable cause did exist for the continued possession of the vehicle"). As the record in this matter confirms, Ospina satisfied that test entitling him to a fee award under this provision as well.[12]

We therefore affirm the order on appeal except for the denial of an attorney's fee award, which we reverse and remand for an award of fees. However, we leave it to the court below to determine whether to award fees under section 932.704 (10) or section 57.105 in light of the statements made herein.

---

[12] <u>See</u> <u>Smith v. Gore</u>, 933 So. 2d 567, 568 (Fla. 1st DCA 2006) ("We again remind the bar that section 57.105 expressly states courts 'shall' assess attorney's fees for bringing, or failing to timely dismiss, baseless claims or defenses. <u>See</u> <u>Albritton</u>, 913 So. 2d at 8-9 (noting the word 'shall' in section 57.105 evidences 'the legislative intent to impose a ***mandatory*** penalty in the form of reasonable attorney's fees to discourage baseless claims, by placing a price tag on losing parties who engage in these activities.') (emphasis in original).").